## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-20482-CIV-MORENO/TORRES

JACK KING, as Personal Representative
of the Estate of JESSICA KING,

       Plaintiff,

v.

CESSNA AIRCRAFT CO., a Kansas
corporation

       Defendant.

_____/

## OMNIBUS ORDER

      This matter is before the Court on several motions *in limine* that are pending

in this case.  Upon review of the motions, responses, replies, and the record in the case

the Court rules as follows.

      This is a case arising out of the October 8, 2001 deadly aviation accident that

took place at Linate Airport in Milan, Italy.  The tragic crash occurred when a general

aviation Cessna aircraft collided on an active runway with Scandinavian Airlines

Flight 686 en-route to Copenhagen, Denmark.  All one hundred fourteen people aboard

both planes died, along with four people on the ground.  The beneficiaries of one of the

American decedents aboard the airliner, Jessica King, seeks damages against Cessna

based upon its alleged negligence.

The pending motions relate to the admissibility of certain testimony and documents during the trial.  Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Plaintiff's Motion in Limine to Exclude Evidence of Settlement Agreements with Third Parties [D.E. 523] is **GRANTED**.  Plaintiff argues that evidence of any settlement agreements reached by it with any third parties, either in the United States or abroad, should be excluded pursuant to Fed. R. Evid. 408. Plaintiff contends that such evidence cannot be used by Cessna to attribute fault to various other entities that may have settled with Plaintiff.  Therefore, Plaintiff maintains that any evidence of or reference to Plaintiff's settlements with third parties must be excluded.  Defendant responds by essentially conceding that evidence of settlement agreements cannot be used to prove liability.  Instead, Defendant argues that existence of such settlements and, more importantly, their amounts must nonetheless be admitted because, if the payments from third parties exceed what the jury determines to be full damages, the jury must award no damages against Defendant Cessna.

Fed. R. Evid. 408 provides in pertinent part:

Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach a prior inconsistent statement or contradiction:
       (1) furnishing or offering or promising to furnish - or accepting or offering or promising to accept - a valuable consideration in compromising or attempting to compromise the claim.

Fed. R. Evid. 408.   The purpose of the Rule is to encourage settlements and compromises of disputed claims, that would be discouraged if such evidence were

admissible. *McClandon v. Heathrow Land Co. Ltd. Partnership*, No. 6:08-cv-35-orl-28GJK, 2010 WL 336345, at *3 (M.D. Fla. Jan. 22, 2010).

We are mindful of Defendant's position that, under the Italian law, Plaintiff may not recover more damages than those that he had actually suffered. However, these fears of "double-recovery" can be cured after the trial by the Court. In other words, should the Plaintiff prevail at trial, the Court can later adjust the jury verdict so that it complies with Italian law. *See, e.g., McInnis v. A.M.F., Inc.*, 765 F.2d 240, 251 (1st Cir. 1985) (finding an "after the verdict" adjustment as "the proper procedure for guarding against over compensation when Rule 408 preclud[ed] the admission of a settlement agreement").

For instance, in *McHann v. Firestone Tire and Rubber Co.*, the Fifth Circuit reversed the trial court's admission of a covenant not to sue given by plaintiff in a product liability action to a third party service station owner. 713 F.2d 161, 162-63 (5th Cir. 1983). The plaintiff in that case had sued Firestone Tire for injuries he sustained when a tire on his vehicle exploded, alleging that the defendant had negligently designed and manufactured the tire. *Id*. Firestone introduced evidence at trial that the plaintiff had previously agreed to a covenant not to sue to a service station owner whose employee had mounted the tire. *Id*. at 163. The Fifth Circuit concluded that the covenant was inadmissible under Rule 408 because such evidence "might lead the jury to deny [plaintiff's] claim against Firestone on the perception that Green Oaks Exxon would not have paid the substantial sum of $27,000 if it . . . were not the party at fault." *Id*. at 166. The court instructed the district court to "simply

deduct the $27,000 from the award, if any, to ensure that [plaintiff] is not overcompensated for his injury contrary to Mississippi law." *Id*.

While Defendant's concerns can easily be addressed by the Court in a post-trial setting or even during trial as part of the jury instruction process, allowing the settlement agreements per se into evidence would greatly prejudice the Plaintiff and run contrary to the Rule 408.

2.      Plaintiff's Motion in Limine to Exclude Transcripts of and Judicial Findings made in Italian Proceedings and to Preclude any Mention of the Italian Proceedings [D.E. 524] is **GRANTED IN PART AND DENIED IN PART**.

Specifically, Plaintiff requests the following: (1) exclude all transcripts associated with the Italian criminal proceedings and preclude Cessna from referring to them or using them in any manner during the trial and (2) exclude any evidence of the Italian tribunals' findings and/or convictions.  In support of his motion, Plaintiff argues that all of the evidence associated with the Italian criminal and restitution proceedings are inadmissible hearsay and, contrary to Defendant's position, none of that evidence is subject to any of the enumerated exceptions under the Federal Rules of Evidence.  However, before we indulge in the analysis on the admissibility of the evidence subject to this motion *in limine*, a brief background of the Italian proceedings will be helpful.

In the immediate aftermath of the Linate disaster, as the Agenzia Nazionale per la Sicurezza del Volo (the Italian equivalent of the National Transportation Safety Board) was launching its investigation, the Public Prosecutor for the Criminal Court

of Milan appointed Captain Mario Pica as Technical Consultant for the Prosecution and instructed him to conduct a separate investigation into the circumstances of the accident and to issue a report.  Captain Pica completed his investigation expeditiously and, as ordered by the Public Prosecutor, issued a detailed and comprehensive report on April 24, 2002.

The   Public Prosecutor then brought criminal charges that resulted in the convictions of the Linate ground controller and several officials of the Italian aviation authorities.  After taking testimony from dozens of witnesses, the Criminal Court of Milan, in two separate cases, issued decisions finding several defendants guilty of negligent homicide and sentencing them to terms of imprisonment.  Intermediate appellate courts and the Italian Supreme Court affirmed the findings of the lower courts, and the Italian Supreme Court issued a final judgment in these cases.

    (a)   *Transcripts of the Testimony Provided in the Italian Proceedings*

The Federal Rules provide that former testimony is not excluded by the hearsay prohibition if the declarant is unavailable as a witness and "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony."  Fed. R. Evid. 804(b)(1); *see also* 2 McCormick on Evidence § 304, at 295-96 (J.W. Strong ed., 5th ed. 1999) ("[T]he issues in the first proceeding, and hence  the purpose for which the testimony was offered, must have been such as to produce an adequate motive for testing on cross-examination the credibility of the testimony.").

Defendant argues that the testimony provided by witnesses in the Italian proceedings are admissible against Plaintiff because Jack King was a party in the

Italian proceedings and enjoyed ample opportunity, through counsel, to examine and cross-examine those witnesses whose testimony Cessna now seeks to admit into evidence. Defendant also argues that Plaintiff had a substantially similar motive to develop that testimony in the Italian proceedings as he would have if the witnesses were available to testify in this action. Based on the record presented, we disagree.

It is undisputed that Jack King intervened in the Italian criminal action and Italian procedural law permitted him to examine witnesses during those proceedings. The substance and nature of the Italian litigation, however, were materially different from this civil action against Cessna, thus rendering the motive to examine witnesses also different. Cessna was not a formal party to the Italian criminal and restitution proceedings. The theories of liability against the Italian defendants were different than Plaintiff's theory of liability against Cessna in this action. Namely, the goal of the Italian proceedings was to find defendants criminally and civilly liable for their negligent maintenance and ground operations at the Linate airport. As such, Plaintiff had no motive at all to demonstrate how non-party Cessna's actions or inactions caused the accident. As Plaintiff correctly points out, had it attempted to do so, it would have only served to exonerate the defendants in that case, contrary to his own interests.

Rule 804(b)(1) requires that Jack King have had a "similar motive" to develop testimony during the Italian proceedings. As Defendant correctly points out, "similar motive" does not mean "identical motive," and the similar-motive inquire is inherently factual. *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring); *United States v. Miles*, 290 F.3d 1341, 1352-53 (11th Cir. 2002). We must, therefore,

consider the similarity of the issue for which the testimony is offered, as well the similarity of Plaintiff's degree of interest in that issue. *See United States v. DiNapoli*, 8 F.3d 909, 912-13 (2d Cir. 1993) (en banc); *see, e.g., United States v. Feldman*, 761 F.2d 380, 385-86 (7th Cir. 1985)(reversing a conviction after finding prior testimony from an earlier civil action against defendant inadmissible in a subsequent criminal proceeding pursuant to Rule 804(b)(1) because defendant implemented "opposite strategies in the civil and criminal trial" and the potential penalties or financial stakes between the two actions differed markedly); *cf. United States v. McClellan*, 868 F.2d 210, 214-15 (7th Cir. 1989) (testimony of wife admissible at subsequent criminal trial since defendant had sufficient motive to impeach her when she testified for creditors in contested bankruptcy proceeding involving several million dollars).

Accordingly, in light of the differing parties and theories of liability, we conclude that Plaintiff had no similar motive to explore Cessna's fault in the accident during the Italian proceedings.  Plaintiff's motion *in limine* is therefore **GRANTED** with regard to the transcripts of the testimony provided in the Italian proceedings.  The out-of-court statements in those transcripts is obviously hearsay, being admitted for the truth of the matter, and not subject to an exception under Rule 803.  As per *Feldman*, the transcripts are not admissible as substantive evidence.  Whether they may be used for other non-hearsay purposes, like impeachment, is not at issue here.

### (b)     *Captain Pica Report*

Cessna contends that the Pica Report is admissible under the public records hearsay exception Rule 803(8)(C) because Captain Pica prepared his report at the

request of the Public Prosecutor attached to the Court of Milan, who is authorized by Italian law to investigate any possible crimes that may have occurred within the district.

Rule 803(8)(C) provides that certain public records and reports are not excluded by the hearsay rule. Namely, it states that:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8)(C). Thus, reports of police officers conducting criminal investigations have routinely been admitted into civil proceedings through Rule 803(8)(C). *See, e.g., Foster v. General Motors Corp.*, 20 F.3d 838, 839 (8th Cir. 1994) (per curiam) (admitting under Rule 803(8) police report of investigating officer in civil suit concerning traffic accident); *United States v. Warren*, 42 F.3d 647, 657 (D.C. Cir. 1994) ("803(8)(C) appears to provide for admission of police officers' statements in public records even in the absence of a demonstration that the statements reflected the officers' personal knowledge"). The rationale behind Rule 803(8) is that an administrative body's findings may be assumed to be trustworthy.

The Pica Report, however, was an expert report obtained by the Italian prosecutor's office to assist in its criminal case. Thus, unlike police reports or other investigative reports conducted by neutral governmental bodies as part of official governmental duties, the Pica Report was essentially a report written for and in anticipation of the criminal litigation. In other words, Captain Pica was essentially an

expert witness for the prosecution in the Italian proceedings. *See* Def.'s Response at 2 ("Criminal Court of Milan appointed Capt. Mario Pica as Technical Consultant for the Prosecution").

These circumstances give rise to a certain level of untrustworthiness and self-interest to the Pica Report. Admitting this report would be at odds with the previously stated rationale underlying the public records exception, that rests on the "assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986); *see also Robbins v. Whelan*, 653 F.2d 47, 50 (1st Cir. 1981) (Department of Transportation report of vehicle safety testing admissible even though it was based in part on information supplied by automobile manufacturers because investigation was completely unrelated to accident and because agency had established standards by which private parties were to collect data, had first hand knowledge of investigation, and had found information supplied by automobile manufacturers sufficiently reliable to publish); *cf. United States v. Romo*, 194 F.2d 889, 895-96 (7th Cir. 1990) (statement contained in police report compiled with assistance of informants inadmissible due to lack of trustworthiness when there was no evidence about how the report was prepared or the basis of the information in report).

For example, in *In re Parmalat Securities Litig.*, a case analogous to ours, a class of bondholders and shareholders in Italian corporation that had collapsed in wake of a fraud scandal brought a purported class action against the company's accountants.

*In re Parmalat Securities Litig.*, 477 F. Supp. 2d 637, 638, (S.D.N.Y. 2007).  One of the accountants' companies moved *in limine* to exclude testimony and report offered in related Italian criminal proceeding, by technical consultant to the Public Prosecutor, concerning company's sister company.  *Id*.  After an in-depth analysis, the court found the technical consultant's report inadmissible under the public records exception due to the consultant's status as a paid advocate and granted defendant's motion.  *Id*. at 641.  The court emphasized that the technical consultant, like Captain Pica in our case, was retained by the public Prosecutor "to assist him in making the criminal case in Milan" and his "work was not merely with a view to possible litigation but for the express purpose of assisting the prosecutor in making his case." *Id*. at 640.  Largely on these findings, the court concluded that the "circumstances [of the report's] preparation indicate[d] a lack of reliability." *Id*. at 641.

Finally, the two cases cited by Defendant are distinguishable because the admitted investigative reports in those cases were prepared by independent governmental agencies that had no stake in any litigation.  *See, e.g., In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 827-28 (2d Cir. 1994) (admissibility of Detective Constable Derek Henderson's report proper because, inter alia, "no bias may be presumed in the Scottish investigation.")*; In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1481-83 (D.C. Cir. 1991) (affirming admission of an investigative report completed by the Secretary General of the International Civil Aviation Organization).

The report at issue here was prepared under different circumstances.  It is hearsay; accordingly, Plaintiff's motion *in limine* is therefore **GRANTED** with regard to the Pica Report.

### (c)   Italian Court's Findings and Judgments

Plaintiff next contends that Italian court findings and convictions are inadmissible hearsay not subject to any enumerated exceptions.  Defendant, on the other hand, argues that the decisions of the Italian courts, to include their "findings of underlying facts," are admissible pursuant to Fed. R. Evid. 803(8)(C) and 803(22) to show that any negligence by Air Evex crew was not the legal cause of the accident.

Defendant argues that the Italian Court's findings are admissible pursuant to Rule 803(8)(C) because "in Italy's civil law system, the Italian judiciary performs an investigative and inquisitorial function in addition to its adjudicative function." Therefore, according to Defendant, decisions of the Italian judiciary are within the hearsay exception of Rule 803(8)(C) for "factual findings resulting from an investigation made pursuant to authority granted by law."  We disagree.

It is the law in our Circuit that "the plain language of Rule 803(8)(C) does not apply to judicial findings of fact." *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994).  Rather, "[i]t applies to factual findings resulting from an investigation made pursuant to authority granted by law."  *Id.* (internal quotations omitted); *see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa. 1980) ("[A] review of the advisory committee note makes it clear that judicial findings are not encompassed; not only is there not the remotest reference to judicial findings,

but there is a specific focus on the findings of officials and agencies within the executive branch.").

Likewise, contrary to Defendant's position, judicial findings are not admissible pursuant to Rule 803(22).  Rule 803(22) provides, in pertinent part, that the hearsay rule does not exclude:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty . . ., adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment . . . .

Fed. R. Evid. 803(22).  The express language of the Rule instructs us that only the evidence of final judgment is admissible, not the factual findings contained therein. *See, e.g., United States v. $125,938.62*, 537 F.3d 1287, 1292 (11th Cir. 2008) (finding a Nicaraguan conviction and the sentence of an individual admissible pursuant to Fed. R. Evid. 803(22), "however, none of the relevant facts found in the judgment of conviction were admissible in the district court.").[1]

In addition, there exists considerable authority that supports exclusion of judicial findings as prejudicial pursuant to Fed. R. Evid. 403 because "[j]udicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, creating a serious danger of unfair prejudice." *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993).  For example, in *United States Steel, LLC v. Tieco, Inc.*, a trial court admitted an opinion issued by

---

[1]   The Notes of the Advisory Committee on Rules provides that three possibilities must be considered when considering the status of a former judgment in subsequent litigation.  The former judgment may (1) conclusive under the doctrine of res judicata, either as a bar or a collateral estoppel, (2) be admissible in evidence "for what it is worth," or (3) have no effect at all.

a state court. *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1286 (11th Cir. 2001). The Eleventh Circuit found the admission of the state court opinion to be reversible error. *Id*. at 1288. The court determined that the application of the balancing test pursuant to Fed. R. Evid. 403 should have precluded admission of the state court order as unduly prejudicial in a jury trial. *Id.* The court emphasized that state court opinions are inadmissible hearsay pursuant to Fed. R. Evid. 801(c), and no exception, not even the public records exception, applies. *Id.* at 1287; *see also Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (factual findings of a judge in a separate case inadmissible hearsay in a fraud action brought by health insurance company against tobacco company).

While judicial findings constitute inadmissible hearsay, Rule 803(22), as previously stated, allows the admissibility of judgments of previous conviction to prove any fact essential to sustain the judgment. *See, e.g., $125,938.62*, 537 F.3d at 1292; *Newby v. Enron Corp.*, 491 F. Supp. 2d 690, 703 (S.D. Tex. 2007) (non-party's guilty plea was admissible against defendants in subsequent civil case). "Rule 803(22) does not make the prior conviction conclusive evidence of the facts determined in the first action but, instead, allows the party to offer an explanation." *First Nat. Bank of Louisville v. Lustig*, 832 F. Supp. 1058, 1065 (E.D. La. 1993) (citing Weinstein's Evidence ¶ 803(22)[01] at 356-57).

Plaintiff nevertheless argues that although the criminal convictions may constitute admissible hearsay pursuant Rule 803(22), the evidence should nonetheless be excluded as prejudicial under Rule 403.  The Rule provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.  In support of his argument, Plaintiff relies on the Fifth Circuit's dicta in *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir. 1978), where the court concluded that the trial court abused its discretion when it admitted a guilty plea of a third party.  *Rozier*, however, is distinguishable and not binding here.

In *Rozier*, the issue was Ford's negligence in manufacturing the car in which plaintiff's decedent was killed when it ignited after being hit from behind by another car.  The trial court admitted into evidence the guilty plea on charges of manslaughter of the driver of the other car.  On appeal, after already holding that Ford's misconduct in failing to disclose certain document relevant to plaintiff's case warranted reversal, the Fifth Circuit also addressed in advisory fashion the evidentiary question presented because "of the near certainty that the question [would] arise at a new trial."  *Id*. at 1346.  The court noted that the criminal conviction had limited probative value since it duplicated already ample evidence of the obvious cause of the auto accident in that case.  *Id*. at 1348.  The court also emphasized its relevance as evidence of legal cause to be "attenuated at best," since it had nothing to do with the issue in the case: the legal liability of the allegedly negligent defendant auto manufacturer for injuries in a car accident.  *Id*.  This latter part of the decision is what Plaintiff relies upon in its

argument here.  Though they may have persuasive value, the panel opinion's conclusions are patently dicta and not binding precedent in this case.[2]

Moreover, *Rozier* involved an automobile manufacturer's liability under the "second collision" theory, a doctrine that "assumes that the primary collision is caused by a party other than the manufacturer."  *Id.*  As the court pointed out, "Rozier has alleged that the primary collision with [third-party] Wilson caused the secondary collision with the fuel tank which, in turn, caused the death of her husband by creating the fire that incinerated him."  *Id.*  Therefore the key question in that case was "whether Ford owed a duty to Mr. Rozier to build a fuel tank that could withstand an impact such as that inflicted by Wilson's car."  *Id.*

Unlike *Rozier*, our case does not involve the "second collision" doctrine.  Instead, it appears that Cessna will seek to utilize the Italian criminal convictions to help establish that its negligence, if any, was not the proximate cause of the accident. Plaintiff has not shown why such a use of a Rule 803(22) judgment is unfair or unduly prejudicial.

---

[2]     It is well understood in this circuit that an appellate court's views as to the possible consequences of proceedings on remand are not part of the "holding" of the case, but rather dicta.  "The holding of a case on appeal can extend no further than the facts presented in that case at the time of the appeal.  All that is said which is not necessary to the decision of an appeal given the facts and circumstances of the case is dicta."  *Aron v. United States,* 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring) (quoting *United States v. Aguillard,* 217 F.3d 1319, 1321 (11th Cir. 2000)); *see also United States v. Eggersdorf,* 126 F.3d 1318, 1322 n. 4 (11th Cir. 1997)("[T]he pertinent language in [*United States v.] Carter,* [110 F.3d 759 (11th Cir.1997)] is dicta – not necessary to deciding the case then before us.");  *Hamilton v. Cannon,* 80 F.3d 1525, 1530 (11th Cir.1996) ("Those passages from *Wideman [v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030 (11th Cir.1987)] are clearly dicta, because they were in no way essential to *Wideman's* holding. . . .").

Accordingly, Plaintiff's motion *in limine* is therefore **GRANTED** with regard to the judicial findings made in the Italian proceedings. Plaintiff's motion *in limine* is **DENIED** with regard to the criminal Italian judgments themselves that relate to the Linate accident, which are admissible under 803(22).

### *(d)     Reference to the Italian Proceedings*

Lastly, Plaintiff requests us to "prohibit Cessna from referring to any of the Italian proceedings any way whatsoever during trial." Plaintiff's request is **DENIED**. As previously noted, the Italian criminal proceedings are clearly relevant to the causation element of the claim. Furthermore, it would be prejudicial to Defendant to categorically disallow it from referring to those proceedings in light of the fact that the Italian criminal judgments are admissible under Rule 803(22).

3.     Defendant's Renewed Motion In Limine Regarding Testimony of Marisa Maretti [D.E. 527] is **DENIED**. Cessna's motion attempts to preclude Plaintiff from directly or indirectly introducing the deposition testimony of Marisa Maretti. According to Defendant, the deposition evidence is inadmissible because it would be improper to permit litigants to introduce favorable testimony from a witness while preventing their opponents from eliciting unfavorable or qualifying testimony from the same witness.

Marisa Maretti is Cessna's approved sales representative in Europe who was the sales agent allegedly personally involved in the potential sale of an aircraft to Mr. Fossatti.[3] On March 3, 2004, Plaintiff deposed Ms. Maretti in Italy after Cessna had

---

[3]     Fossatti was the potential customer for whom Cessna was conducting the sales demonstration flight.

submitted her affidavit in support of its Motion to Dismiss for *Forum Non Conveniens* ("FNC Motion"). Plaintiff contends that during her deposition Ms. Maretti refused to answer numerous questions despite absence of any privilege. Based on this, Plaintiff moved to strike Maretti's affidavit. The Court granted Plaintiff's motion, and ordered that "Ms. Maretti [would] be prohibited from testifying at trial, unless she [submitted] to a standard eight (8) hour deposition and [answered] all questions that [did] not fall within the ambit of a recognized legal privilege." *See* April 15, 2004 Omnibus Order at 3 [D.E. 79].

Cessna then agreed to have Ms. Maretti deposed for a second time on July 28, 2004. Once again, however, Ms. Maretti repeatedly refused to answer numerous questions. After the July 28, 2004 deposition, Cessna requested that the Court reinstate Ms. Maretti's previously stricken affidavit and consider her testimony when ruling on its FNC Motion, arguing that it had complied with the Court's April 15, 2004 Order. *See* Cessna's Motion Requesting the Court to Consider the Testimony of Marisa Maretti When Ruling on FNC Motion [D.E. 122]. The Court denied Cessna's motion finding that Ms. Maretti had once again failed to answer Plaintiff's counsel's questions. *See* Order Denying Defendant's Motion to Consider Testimony [D.E. 149]. Subsequently, Plaintiff moved to strike Ms. Maretti as a witness for Cessna [D.E. 129] and the Court granted the motion on October 22, 2004 [D.E. 151].

Thereafter, Cessna filed its Motions in Limine regarding Testimony of Marisa Maretti on February 11, 2005 [D.E. 209 and 231], asserting that, pursuant to Fed. R. Civ. P. 32, the Court should preclude Plaintiff from making any reference to any of Ms.

Maretti's statements at her depositions.  The Court denied those motions on February 18, 2005.  *See* Omnibus Order at 2 [D.E. 248].

Given the fact that the arguments regarding the inadmissibility of Ms. Maretti's deposition raised in Defendant's pending motion essentially mirror those found in the February 11, 2005 motion *in limine*, we see no reason to undermine or reconsider Judge Moreno's February 18, 2005 Omnibus Order.[4]

Defendant advances only one additional previously unraised reason in support of its motion *in limine*.  Namely, Defendant argues that Ms. Maretti's testimony is conclusively  irrelevant to the question of who caused the Linate collision because the Italian appellate courts have labeled them as such during the appellate proceedings.  Defendant's argument is misplaced because we are not necessarily bound by Italian court's evidentiary findings and conclusions.  Furthermore, as noted in the earlier section of this Omnibus Order, the issue in the Italian action was whether the airport officials were criminally negligent, while the issue in this proceeding is whether Cessna was negligent and whether that negligence proximately contributed to that accident.

4.   Defendant's Renewed Motion In Limine Regarding Evidence Concerning Air Evex's Arrival at Linate Airport [D.E. 528] is **DENIED**.  The motion seeks to

---

[4]   Of course, should Plaintiff attempt to introduce the deposition testimony of Ms. Maretti during trial, Defendant is free to utilize any part of that deposition for impeachment purposes.  Furthermore, depending on the degree of Plaintiff's actual use of the deposition at trial, Defendant may seek permission from the trial judge during the course of the trial to modify his *in limine* Order on the basis that Plaintiff waived his right to object by opening the door to such a substantial degree.  Whether or not that occurs, however, is premature to say at this point.

preclude Plaintiff from introducing evidence or testimony regarding the approach and landing of the Air Evex aircraft at the Linate airport.  Defendant argues that the evidence is irrelevant and will likely confuse the jury.

Once again, Defendant is essentially asking us to reconsider Judge Moreno's February 18, 2005 Order denying Cessna's original Motion in Limine Regarding Evidence Concerning Air Evex's Arrival at Linate Airport [D.E. 248].   Again, Defendant is basing its renewal of the motion on the finality of the Italian criminal proceedings that adjudicated certain airport personnel guilty for causing the collision. However, as we have already stated, this argument does not warrant reversal of the previously entered denial on a motion *in limine*.

5.    Defendant's Motion in Limine to Preclude Plaintiff from Presenting Arguments or Evidence Inconsistent with the Findings of the Italian Courts [D.E. 529] is **DENIED**.  Defendant argues that collateral-estoppel, under both Italian and American law, precludes Plaintiff from presenting evidence contrary to those made by the Italian court in the criminal proceedings.  In other words, Defendant contends that Plaintiff should not be allowed to relitigate already settled issues under the collateral-estoppel doctrine.

Without addressing its merits, we find Defendant's collateral-estoppel argument improperly raised in a motion *in limine* at this stage.  "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001).  The doctrine of collateral estoppel, however, "precludes a

party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Urfirer v. Cornfield*, 408 F.3d 710, 718 (11th Cir. 2005) (internal citations omitted). Such matters should not fall within the purview of motions *in limine*. Instead, they should be raised, and indeed have been raised, in a motion for summary judgment. *See, e.g., Garcia v. International Elevator Co., Inc.*, 358 F.3d 777, 782 (10th Cir. 2004) ("Whether res judicata or collateral estoppel bars this action in whole or part is more appropriately decided in the context of a motion for summary judgment . . . ."). The collateral estoppel issue will be adjudicated in conjunction with Cessna's motion for summary judgment. The motion *in limine* will therefore be **DENIED** without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of May, 2010.

        /s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge