UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-20482-CIV-MORENO/TORRES

JACK KING, as Personal Representative
of the Estate of JESSICA KING,

      Plaintiff,

vs.

CESSNA AIRCRAFT CO.,
a Kansas Corporation,

      Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING DEFENDANT'S *DAUBERT*
MOTION TO SUPPRESS PLAINTIFF'S EXPERT DONALD SOMMER**

This matter is before the Court on Defendant's *Daubert* Motion *in Limine* to Preclude Testimony from Plaintiff's Expert Donald Sommer [D.E. 525]. After considering the arguments raised in the parties' briefs, the Court concludes that Defendant's motion should be granted in part and denied in part.

## *I. BACKGROUND*

This is a case arising out of the October 8, 2001 deadly aviation accident that took place at Linate Airport in Milan, Italy. The tragic crash occurred when a general aviation Cessna aircraft collided on an active runway with Scandinavian Airlines Flight 686 en-route to Copenhagen, Denmark. All one hundred fourteen people aboard both planes died, along with four people on the ground. The beneficiaries of one of the

American decedents aboard the airliner, Jessica King, seeks damages against Cessna based upon its alleged negligence.

Plaintiff hired Donald Sommer as an expert witness in the areas of piloting, accident reconstruction, and demonstration/sales flights.  During his November 23, 2004 deposition, Sommer rendered his opinion on who controlled the Air Evex flight, whether Cessna pressured the Air Evex flight crew to complete the flight, and whether the crew was distracted during the flight.  Namely, Sommer concluded that: 1) because Cessna was in charge of the presentation flight, it was Cessna who was responsible for stopping the flight given the bad weather; 2) because the Air Evex's crew decided to land in a bad weather at Linate airport Cessna put a lot of pressure on the crew to complete the flight; and 3) the Air Evex's crew was distracted by various factors, to include the passengers and weather, because the crew conducted a series of extremely elementary fatal mistakes.

Defendant takes issue with the three conclusions reached by Sommer.  Cessna argues that Sommer's opinions on these subjects are unreliable because they are based on his subjective belief and unsupported speculation, rather than on facts or a proper expert methodology.  Cessna further argues that Sommer is simply guessing as to what happened on the Air Evex flight while ignoring reasonable alternative explanations.

## II.  LEGAL STANDARD

When faced with a proffer of expert testimony under Rule 702, the party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence.  *Allison v. McGhan*

*Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Thus, the trial court must function as a gatekeeper and engage in a three-part inquiry to determine whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)). The Eleventh Circuit has referred to these requirements as the "qualifications," "reliability," and "helpfulness" prongs and, although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The Court's analysis must keep in mind that "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) ("A district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'") (quoting *Allison*, 184 F.3d at 1311). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Quiet Technology*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

> In determining the reliability of a scientific expert opinion, the Court considers:
>
> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Technology*, 326 F.3d at 1341 (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). This list of factors, however, does not exhaust the different considerations that may bear on the reliability of an expert opinion. *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). "A federal court should consider any additional factors that may advance its Rule 702 analysis." *Id.*[1] Some of those factors may apply in a given case, while others may not. "Whether the *Daubert* opinion factors are even pertinent to assessing reliability in a given case will 'depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire*, 526 U.S. at 150).

It appears that Defendant concedes that expert testimony is required in this case in order to assist the fact finder in determining the cause of the disaster at the Linate airport. It also appears that Cessna is not attacking Sommer's qualifications as an expert in this area. Thus, the Court will only primarily address the "reliability" prong of the *Daubert* test as it relates to the three disputed conclusions reached by Sommer.

---

[1] The principles enunciated in *Daubert* and *Kumho Tire* have been incorporated into Rule 702 which now permits qualified experts to proffer their expert opinions where (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

### III.  ANALYSIS

A.  *<u>Opinion Regarding Cessna's Control of the Demonstration Flight</u>*

Defendant first challenges under Rule 702 Sommer's expert opinion regarding Cessna's "control" of the demonstration flight.  Defendant argues that this opinion is not based on any knowledge or expertise, but rather only on the assumption that because Cessna's independent sales agent, Stefano Romanello, chartered the Air Evex plane for demonstration flight, Romanello must have "controlled" the Air Evex crew.  Presumably, by Cessna taking over "control" of the flight Cessna Sommer concludes that Cessna itself was negligent and liable for the operational decisions of the Air Evex crew.  Defendant argues that Sommer's reasoning is legally flawed and the product of purely subjective belief and unsupported speculation.

Plaintiff responds in opposition that Sommer's opinion satisfies *Daubert* because it is based on his experience, combined with the evidence of bad weather in the area, plus the fact that a sales representative was present who knew the capabilities of the plane and how to conduct flight demonstrations.

Upon review of Sommer's deposition, it also appears that his opinion regarding Cessna's control of the demonstration flight was premised on three letters that were exchanged between Cessna and Air-Evex.  *See* Deposition of Donald E. Sommer ("Sommer Dep.") at 39 [D.E. 547 Ex. B].  Namely, the following excerpts summarize Sommer's conclusion:

> Q: What about Exhibit Number 12, the letter of February 12, 2003, leads you to conclude that Cessna was in charge of the flight?

> A: Paragraph two states in response to your question, "Cessna retained Air-Evex to conduct the flight." Kind of tells me they were in charge of it.
>
> . . .
>
> Q: What do you mean, Mr. Sommer, by "in charge?"
>
> A: I mean, they're the ones that dictated when and where it went and what it was going to do.
>
> Q: All right. What did they dictate? What did Cessna dictate as to when and where it went?
>
> A: They dictated that the aircraft was to arrive - excuse me, it was to fly at 0800 from Milan-Linate airport to Le Bourget in Paris and it was to fly at 1630 from Le Bourget back to Milan-Linate. They set up the meeting for the demoee.
>
> Q: Mr. Fossati?
>
> A: Mr. Fossati, Thank you. And they made arrangements for payment for the aircraft. And that's what I mean when I say they were in charge of the flight.

Sommer Dep. at 40-42.

The *Daubert* inquiry does not require consideration of whether the expert's testimony is correct, but only whether the testimony is reliable and should be considered by the jury. *See, e.g., Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292-93 (11th Cir. 2005); *Quiet Technology,* 326 F.3d at 1341 (traditional tools for attacking shaky but admissible evidence should be reserved for trial). Plaintiff contends that Sommer's conclusion is reliable and admissible because it is largely based on his extensive experience in demonstration/sales flights and because Sommer is familiar with the responsibilities, knowledge, and perceptions of sales representatives. Yet, nowhere in the deposition does Sommer ever explain how his experience permits him to arrive at

this conclusion. Nor has he supplemented the record with a declaration in opposition to this motion with a clear explanation of how his past experience, as opposed to mere inference in support of the party who retained him, lend credibility to that conclusion. That failure to support his opinion on this record is dispositive.[2]

In *Frazier*, the Eleventh Circuit, in evaluating the reliability of expert opinions, addressed the differences between scientific expert opinions and non-scientific experience-based testimony. 387 F.3d 1244, 1261-62 (11th Cir. 2004). Regardless of the specific factors considered in evaluating the reliability of expert testimony, "[p]roposed testimony must be supported by appropriate validation - i.e., 'good grounds,' based on what is known." *Id*. (quoting *Daubert*, 509 U.S. at 590). The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *Id*. (quotations and citations omitted). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Id*. (quotations and citations omitted).

---

[2] The Court notes again that it is the proponent of expert opinion testimony who bears the burden of establishing its admissibility by a preponderance of the evidence. *McCorvey,* 298 F.3d at 1256 (11th Cir. 2002); *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999). And an evidentiary hearing has not been requested and is not required to dispose of this motion. *See Corwin v. Walt Disney World Co.,* 475 F.3d 1239, 1252 (11th Cir. 2007) ("Although [the plaintiff] argues that the district court erred in failing to conduct a *Daubert* hearing before excluding the affidavits, [the plaintiff] did not request a hearing at the time and, although they are often helpful, hearings are not prerequisite to such determinations under the Federal Rules or established law.").

In applying these principles in *Frazier*, the Eleventh Circuit evaluated whether the district court abused its discretion by excluding some of an expert witness's opinion testimony because the witness failed to establish its reliability. *Id*. at 1264. The court affirmed the trial court's decision to exclude the testimony:

> [The expert] said his opinion was based on his experience, and on various texts in forensic investigation. However, even after repeated prompting, [the witness] never explained just how his own experience, or the texts he mentioned, supported his . . . opinion. Indeed [the witness] identified only a single investigation he had worked on . . . .

*Id*. at 1265. The Court continued:

> Since [the witness] was relying solely or primarily on his experience, it remained the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case.

*Id*. Furthermore, the court found the witness's testimony to be imprecise and unspecific. *Id*. at 1266.

We thus know from *Frazier* that to allow an expert to give a subjective opinion merely because he is an expert and experienced in the field would eliminate the requirement of reliability. Plaintiff here has failed to meet the burden of showing how this expert, though experienced, may render a reliable opinion before the jury on this question. There is no showing in this record, for instance, that Sommer experienced a pilot's control taken over by a charterer or aircraft manager. He has not shown that he himself was ever in that situation. He has not pointed to any record evidence from this particular flight record that evidences the pilot tendering control of the aircraft to any Cessna personnel. He has not testified that based on his experience most

reasonable pilots, presented with this "pressure," would relinquish "control" over an aircraft in their command. The best his testimony can do is show that the pilot was commanded to fly from point A to point B at given times, which is what actually happens every time a commercial aircraft takes off. Sommer has not shown how these pilots, faced with those pressures, lost "control" of the aircraft any more than any commercial pilot loses "control" because his employer or charterer puts pressure on him or her to maintain an on-time arrival record.

So, then, what exactly does Sommer's "experience" here have to do with anything? Sommer does not say. He simply renders his conclusory opinion based upon his review of three letters. It is certainly not his fault that he does not have the benefit of any witness statements or of any cockpit voice recordings that would support his position. There are air traffic control communications with this aircraft but Sommer has not pointed to anything in those communications to support his analysis. He is left to render an expert opinion, based upon inference and conjecture, but not on any scientific testing, research, or personal experience that he can tie to the conclusion that he reaches here.

We remind ourselves that we should guard against exclusion of expert testimony simply because we, the Court, may find it dubious or "shaky." Undoubtedly, were we to deny Cessna's motion, trial counsel could make much of our own criticisms of Sommer's opinion on cross examination. And perhaps were this case presented to the Court at a bench trial, exclusion of this opinion would not be necessary. But it is proffered in a case that will be tried before a jury. We thus cannot cast a blind eye to such rank speculation being presented to our jury under the guise of reliable expert

testimony. Rule 702 requires that we exercise our role as gatekeeper in this instance.

Further support for our decision also flows from the fact that the proffered expert opinion apparently flies in the face of various provisions of Italian Navigation Code that assign exclusive control over an aircraft to its captain. Those principles have a firm foundation in domestic aviation law as well. *See* 14 C.F.R. § 91.3; *Capello v. Duncan Aircraft Sales of Fla., Inc.,* 79 F.3d 1465, 1469 (6th Cir. 1996) ("Rule one makes it clear that the pilot in command, like the ship captain, has the ultimate responsibility for the safety of his plane and his passengers and must comply with the extensive body of regulations established by the FAA."). To allow an expert witness at trial to testify in a manner contrary to these well established legal principles, absent a firm foundation in the record and specific tangible experience from which to assess it, would be highly improper and, ultimately, quite unhelpful to the jury.

Along those same lines, moreover, it is not clear how in general Sommer's opinion regarding who was in charge of the demonstration flight may be helpful to the trier of fact. Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* A trial court has an obligation to ensure that an expert is not misused in this manner. As one court put it involving a different aircraft accident:

> Our point is that the ultimate issue in such cases can too easily become whatever an expert witness says it is, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the

> jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.

*In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir. 1982) (reversing award of damages in part due to expert testifying at trial in manner "so abusive of the known facts and so removed from any area of demonstrated expertise").

There is no factual dispute that Cessna chartered this demonstration flight, with specific time and place directives. There is no dispute that Cessna was financially responsible for the pilots and the aircraft. Undoubtedly Plaintiff will ask the jury to find Cessna liable for the actions or inactions of its de facto agent, the Air Evex crew. What the Plaintiff should not be able to do is turn that argument into "expert" testimony from a pilot who reviews the record and reaches a "technical" opinion untethered to the record or his experience. It does not help the jury's assessment of the evidence for "expert" testimony to be presented in this fashion.

Accordingly, Defendant's motion *in limine* is granted as to this issue. Sommer may not render his opinion about whether Cessna was "in charge" or "in control" of the piloting of the demonstration flight because his conclusion has no relationship to any tangible experience he can point to that can be reliably applied to this case.

### B.     *Opinion Regarding Cessna's Pressure on Air Evex Crew*

Defendant similarly argues that Sommer's conclusion that Cessna pressured the Air Evex crew to land is not reliable because it is solely premised on his subjective belief and unsupported by any evidence. Defendant points out that Sommer based his conclusion only on the fact that Air Evex decided to land the aircraft in inclement

weather. In other words, because Air Evex crew decided to land in bad weather, it naturally follows that somebody had to pressure them to do so.

During his deposition, Sommer explained his conclusion on this matter by relying on two factors. First, as an experienced pilot, Sommer concluded that the mere fact "that the aircraft arrived in Linate in substandard weather conditions after making an approach that [pilot] shouldn't have made" gives him a strong indication that passengers pressured him into doing so. *See* Sommer Dep. at 46. Second, Sommer found further support for his conclusion due to the "fact that Mr. Romanello was being pressured by Ms. Maretti on a regular basis in order to get demos done and to get aircraft sold and aircraft moved." *Id*. at 48.

In short, we find Sommer's conclusion to be patently unreliable, even more so than the one above that we already excluded. Although it appears that Sommer used his expertise to conclude that no reasonable pilot would have decided to land the plane in bad weather unless he was pressured by third-parties to do so, he essentially speculates as to the pilot's state of mind at the time of landing at Linate aiport. As such, there is nothing "scientific" in speculating about pilot's state of mind in light of the actions he has taken. *See, e.g., Johnson v. AVCO Corp.*, No. 4:07CV1695CDP, 2010 WL 1329361, at *11 (E.D. Mo. Apr. 6, 2010) (striking expert opinion that "pilot Swan 'felt pressure to land' at Wabash airport . . . based on HFA studies that . . . show that sometimes people take risks when they are eager to get home, and sometimes passengers put pressure on pilots when they are eager to get home" because experts are not allowed to tell juries that something happened simply because it is possible.)

While Sommer is certainly free to explain to the jury as to the reasonableness or recklessness of the pilot's actions, Sommer cannot so blatantly opine as to the pilot's state of mind that motivated those actions. Sommer did not utilize any type of methodology in reaching his conclusion. Plaintiff argues that Sommer's opinion is based on his extensive piloting and aircraft sales experience. But nowhere in his deposition does Sommer ever explain how or why his experience led him to conclude that it was Cessna's pressure that motivated the Air Evex's pilots to land the plane. Sommer's "[s]ubjective speculation that masquerades as scientific knowledge does not provide good grounds for the admissibility" of his expert opinion. *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (quoting *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)).

Could Sommer be asked, in hypothetical form, as to certain pressure that pilots in commercial or sales demonstration aviation face? Of course he could. Given his piloting and aircraft accident reconstruction expertise, Sommer can in descriptive fashion explain to the jury what factors can come into play that may cause a pilot to land or take off in unsafe weather conditions. All that is certainly valid and appropriate for him to testify about, which would be helpful to the jury's understanding of the case here. But to take the next step, and render an inferential opinion that this particular pilot "must have" been distracted by pressure from his passengers, again without the benefit of any tangible evidence in the record, simply crosses the line to the "speculative" and "purely conjectural" type of testimony that trial courts must be wary against. *See In re Air Crash Disaster at New Orleans,* 795 F.2d at 1235.

In this respect, indeed, Sommer is not only testifying as to the state of mind of the pilots, but also of the state of mind of *the passengers*. After all, he concludes that, in the first place, the passengers' communications with the pilot and each other distracted the pilots. He then takes that to the next level by speculating as to what those communications were: they were communications that were so coercive, demanding, or forceful that they amounted to "pressure" on the pilots. In this way Sommer is opining that the passengers' communications *intended* to affect the pilots' actions. And he concludes that those efforts bore fruit by pressuring the pilots to ignore their own training and experience. Nothing in Sommer's background, experience, or analysis in this record supports such a visionary conclusion under Rule 702.

Based upon Sommer's experience as a pilot and reconstructionist, he can obviously deduct and infer that the pilot's actions here were so reckless and unreasonable that they must have been distracted in some way. *See infra* Sec. III.C. That level of analysis is certainly defensible on this record. What is not defensible is this expert's imagined conclusion that, from the possible distractions that may have affected the pilot, the pivotal distraction in this case was a result of intentional "pressure" from the passengers.

Accordingly, Defendant's motion *in limine* is granted on this issue as well. Sommer may testify as to the reasonableness of the pilot's actions in light of the weather conditions. He may also testify as to factors that he has witnessed in his experience, either as a pilot or a reconstruction expert, that may cause an otherwise

trained pilot to fly in unsafe weather conditions. Sommer may not, however, speculate that it was Cessna's pressure that forced the Air Evex's pilots to land the plane when there is zero supporting evidence of record that he points to, beyond his speculation.

### C. *Opinion That Air Evex's Crew was Distracted*

Defendant then argues that Sommer's opinion that Air Evex's pilots were distracted, because the crew conducted a series of extremely elementary fatal mistakes, should be excluded because it is too based solely on subjective speculation.

Sommer claims he reached his conclusion after reviewing the weather and the voice communication data between the air traffic controllers and the Air Evex pilots. He reasoned that, based on his experience in airplane sales business, a demonstration flight creates "a very potentially dangerous situation" for the pilot and the crew due to the "very high workload" associated with such a flight. *See* Sommer Dep. at 56. Sommer emphasized that it is not unusual for prospective clients during demonstration flights to ask questions about the aircraft, its capabilities, and other facts in order to familiarize themselves with plane. *Id.* Thus, according to Sommer, "bad weather add[ed] further potential problems and dangers to the operation." *Id.* at 73. As Plaintiff correctly points out in this respect, Sommer did not – and indeed shall not – opine that the passengers on the plane could have been the only source of such distraction. Instead, he concluded that any of the mentioned factors or combination of all must have distracted the pilots due to the basic nature of mistakes they made while taxing at Linate airport.

We find this particular opinion to be reasonably supported by the evidence. Unlike the proffered testimony discussed above, here Sommer has supported his opinion with explicit references to his tangible experience and how the specifics of that experience led to his conclusion. *See, e.g., Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *see also Frazier*, 387 F.3d at 1261; *cf. AVCO Corp.*, 2010 WL 1329361, at *6 ("[expert's] opinion that the flight path indicates that the pilot was distracted by smoke goes too far into the realm of testimony about the pilot's state of mind . . . [and] there is nothing [in evidence] else to support [his] conclusion.").

Finally, Sommer's testimony in this instance will assist the jury in evaluating the unique environment that the pilots were operating in. *See, e.g., In re Air Crash at Lexington, Kentucky, August 27, 2006*, No. 5:06-CV-316-KSF, 2008 WL 2954973, at *4 (E.D. Ky. July 30, 2008) ("The jury does not have the specialized knowledge of aviation rules, procedures, training and standards that impacted the pilots' performance . . . The experts' substantial experience will assist in the jury's understanding of the many factors that Comair claims contributed to pilot confusion prior to the crash."); *cf. Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009) (Sommer's opinion that Defendant should have advised Cirrus to insulate the breather line during the installation audit inadmissible because while "it may be supported by the facts and the record, cannot be said to be the product of any sort of methodology, even if it logically flows from the documents themselves . . . [and would not] assist the trier of fact, as it

is a conclusion at which jurors could arrive on their own and requires no scientific or specialized knowledge."). There is nothing improper about Sommer drawing a conclusion that, absent any other evidence, the pilots' actions or inactions here must have been influenced by distractions in the cockpit. That conclusion is supported by this record, without intruding upon the pilots' or the passengers' state of mind at the time of the crash.

Of course, although we find Sommer's opinion admissible it does not follow that it is necessarily correct. Cessna will have an opportunity to flush out any weaknesses in his opinion on cross-examination. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir 1988) ("[W]eaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility.).

Defendant's motion *in limine* is denied with regard to Sommer's opinion about the various factors that distracted the Air Evex's pilots during taxing at the Linate airport.

### IV.  CONCLUSION

For the reasons stated above it is hereby, **ORDERED AND ADJUDGED** that Defendant's *Daubert* Motion *in Limine* to Preclude Testimony from Plaintiff's Expert Donald Sommer [D.E. 525] is **GRANTED** in part and **DENIED** in part.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of May, 2010.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge