## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 03-20482-CIV-MORENO/TORRES

JACK KING, as Personal Representative
of the Estate of JESSICA KING,

      Plaintiff,

v.

CESSNA AIRCRAFT CO., a Kansas
corporation

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendant Cessna Aircraft Corporation's ("Cessna" or "Defendant") Motion for Summary Judgment filed January 29, 2010 [D.E. 573] and Plaintiffs Jack King and the estate of Jessica King ("King" or "Plaintiffs") Motion for Partial Summary Judgment also filed January 29, 2010 [D.E. 571]. Both Parties filed Responses in opposition of their respective motions. Furthermore, on July 27, 2010, with leave of the Court, Defendant filed its Supplemental Brief in Support of Summary Judgment [D.E. 614]. Plaintiff filed its Response to Defendant's Brief on August 13, 2010 [D.E. 615]. Upon review of the motions, responses, replies, supplemental briefs and the record in the case, we conclude that both motions should be granted in part and denied in part.

## I.  BACKGROUND

### A.    *The Linate Accident*

This is a case arising out of the October 8, 2001 deadly aviation accident that took place at Linate Airport in Milan, Italy.  On a foggy fall morning, a private Cessna jet operated by Air Evex, a German charter company, executed a wrong turn, taxiing toward an active runway.  After the Linate air traffic controllers apparently failed to instruct Cessna's pilots about their disastrous path, the Air Evex jet collided with a Copenhagen-bound Scandinavian Air Systems Flight 686 that was just taking flight. All one hundred fourteen people aboard both planes died, along with four people on the ground.  With the exception of one American and one South African national, all of the remaining victims were citizens of various European countries.  It was the deadliest aviation disaster in Italian history.

The small Cessna Citation CJ2 airplane that collided with the SAS airliner was chartered by Defendant Cessna Corporation from a former client, Air Evex, to whom it had recently sold the aircraft.  Defendant Cessna chartered the aircraft so that it could conduct a demonstration flight to a prospective purchaser Luca Fossati.  The Citation flew from Cologne, Germany to Milan, Italy to pick up a Cessna sales associate and the prospective buyer.  The tragic accident occurred as the Citation was taxiing for a take-off on the demonstration flight to Paris, France.

### B.    *Miami Proceedings*

In 2003, multiple lawsuits were filed in the United States District Court for the Southern District of Florida alleging claims of wrongful death and negligence on the

part of Cessna. Plaintiffs in these cases, which the Court subsequently consolidated into one action, were the beneficiaries of one American[1] and sixty-nine European decedents aboard the airliner. *See* Second Am. Compl. [D.E. 30]. According to Plaintiffs, the crash was caused by the Defendant's failure to properly implement policies and procedures in relation to demonstration flights.

On January 27, 2004, Cessna moved to dismiss the consolidated action in its entirety, arguing that Italy is a more convenient forum to resolve the dispute among the parties. *See* Def.'s Mot. to Dismiss for Forum Non-Conveniens [D.E. 39]. After a thorough analysis of various private and public factors, the Court denied Defendant's motion. *See* Order Den. Mot. to Dismiss [D.E. 155].

Following the Parties' stipulation that Italian law controls the outcome of the case, the Court held a two-day evidentiary hearing on Italian law on September 14-15, 2005. Contrary to the Parties' initial representations, however, the hearing flushed out various material differences between the expert witnesses as to the substance of Italian law. As a result, at the conclusion of the hearing, the Court indicated that it would reconsider Defendant's *forum non-conveniens* motion.

Subsequently, on October 21, 2005, the Court granted Defendant's motion to dismiss as to all foreign plaintiffs and stayed the action as to the sole American plaintiff. *King v. Cessna Aircraft Co.*, 405 F. Supp. 2d 1374 (S.D. Fla. 2005). The Court reasoned that the sole American plaintiff was entitled to "a high lever of deference and a presumption of convenience," while the foreign plaintiffs were to receive "less

---

[1] The sole American victim, Jessica King, was a native of California and was employed with the Marriott corporation in Denmark at the time of the accident.

deference because it is likely that their choice was made 'for some reason other than convenience.'" *Id.* at 1377.  In staying the domestic plaintiff's case, the Court relied in part on the conflicting testimony among expert witnesses on various issues of Italian law.  *Id.* at 1381.  The Court further reasoned that in "stay[ing the case] until the Italian courts have resolved the Italian law disputes as they relate to the 69 other plaintiffs, [the Court will] benefit [from the] actual Italian court decisions that are related to this precise case [and would eliminate] any conflict in following Italian law." *Id.*  An appeal from both sides followed.

On October 24, 2007, the Eleventh Circuit vacated and remanded both the dismissal and the stay orders.  *King v. Cessna Aircraft Co.*, 505 F.3d 1160 (11th Cir. 2007).  The Court of Appeals held that an indefinite stay with no concrete end in sight was impermissible.  *Id.* at 1172.  Having concluded that the stay was improper, the Eleventh Circuit also vacated our dismissal of the European plaintiffs' case and remanded it for a determination as to, "what, if anything, the court might have done differently had it known that it could not stay [American plaintiffs'] proceedings in the King case." *Id.* at 1173.  Upon remand, Judge Moreno once again dismissed the foreign Plaintiffs' case and vacated the stay as to King.  *King v. Cessna Aircraft Co.*, No. 03-2482-CIV, 2008 WL 276015 (S.D. Fla. Jan. 31, 2008).[2]

Subsequently, the pending cross-motions for summary judgment followed.

---

[2]    The Eleventh Circuit has since affirmed the dismissal of the European plaintiffs. *King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009).

C.    *Italian Proceedings*

Following the Linate accident, the Public Prosecutor attached to the Court of Milan and the Agenzia Nazionale per la Sicurezza del Volo[3] ("ANSV") conducted investigations as to the causes of the disaster.  At the conclusion of the investigations, the Public Prosecutor charged eleven individuals, who occupied various managerial positions at the Ente Nazionale per l'Assistenza al Volo ("ENAV"),[4] Ente Nazionale per l'Aviazione Civile ("ENAC"),[5] and SEA s.p.a.,[6] with crimes of aviation disaster and multiple involuntary manslaughter (Article 449, Paragraph II of the Criminal Code and Article 589, Paragraph III of the Criminal Code).  *See generally Gualano, et al. v. Chief Public Prosecutor, et al.*, Cass., Feb. 20, 2008, n. 22614 [D.E. 480-1].

Air Evex, Hermann-Dieter Eschmann,[7] SEA, ENAV and ENAC responded to the criminal proceedings as civilly liable parties.  Furthermore, Plaintiff Jack King intervened to become a plaintiff civil party in the Italian criminal proceedings.[8] Cessna, however, was never a party to these Italian proceedings.

---

[3]    The National Agency for the Safety of Flight.

[4]    The National Flight Assistance.

[5]    The National Civil Aviation Agency.

[6]    An airport services operation company.

[7]    Hermann-Dieter Eschmann was the owner of the Cessna Citation involved in the crash.

[8]    Under Italian law, persons claiming to be victims of charged offenses can apply to the court to intervene as *parte civile* or "civil parties" in pending criminal proceedings to seek a civil judgment for damages.

On April 16, 2004, the Fifth Section of the Criminal Division of the Court of Milan found Sandro Gualano (ENAV Managing Director), Francesco Federico (ENAC District Manager Milan Regional System Manager), Paolo Zacchetti (Flight Controller), and Vincenzo Fusco (Linate Airport Manager) guilty of criminal negligence charges and sentenced to various prison terms.[9]  Furthermore, pursuant to Article 538 of the code of criminal procedure, the Court found all criminal defendants and civil third-party defendants "jointly and severally liable to the Plaintiffs in sums to be established during a future proceedings."  *See* Milan Trib., Apr. 16, 2004, n. 4426/03 [D.E. 261].

On December 16, 2009, Plaintiff Jack King filed his "final pleas" in the Italian civil court.  *See King v. Air Evex GmbH*, Milan Trib., n. 59356/2003, Formulation of Final Pleas [D.E. 578-7].  Although Jack King acknowledged in his pleading that he had already received a total of EUR 333,628.97 and USD 73,026.50 from settlements with various parties in this matter, he sought additional damages to be awarded by the court.

On June 21, 2010, the Court of Milan issued its judgment in the case, concluding that the monies Jack King already received were "amply satisfactory" to compensate him fully for his damages under Italian law.  *See King v. Air Evex GmbH*, Milan Trib., n. 59356/2003, at 27, Judgment of the Court of Milan [D.E. 614-1].  The Court of Milan held that Jack King and the other plaintiffs could be compensated for the "non-economic damage arising from loss of the parental relationship" only within the

---

[9]     Convictions of Vincenzo Fusco and Francesco Federico were eventually reversed by the Court of Appeals and the Italian Supreme Court.

maximum amount provided by the damages tables issued by the Milan Civil Justice Board of Observers. *Id*. at 21. The court further explained:

> [T]hese are non-binding criteria, but because of the rational manner in which they were prepared, they are deserving of absolute acceptance, keeping in mind . . . that they are susceptible to derogation (due to excessiveness or insufficiency) in the presence of specific attributes of the matter in question that go beyond the nature of the damages already assessed . . . in setting the monetary range.

*Id*. at 22. The court also "exclude[d] the idea that the plaintiffs' allegation includes 'examples that are completely exceptional with regard to ordinary case law for these torts,' which the report accompanying the Milanese tables itself cites as arguments in support of departing from those tables." *Id*.

The Court of Milan also rejected "any hereditary compensation for mental anguish suffered by the accident victims in the moments immediately preceding their decease." *Id*. at 25. The court pointed out that because the interval between the collision of the aircraft and the passengers' death "last[ed] no longer than one minute," "the period preceding their death" cannot be "evaluated as catastrophic psychic damage." *Id*.

With regard to Jack King's economic damages, the court found that "[t]he financial and social status of the plaintiffs[10] (university professors, a former manager, and the owner of a California children's hair salon, respectively) ultimately lead to the exclusion of the fact that they allegedly would have enjoyed in their old age the financial support of their children." *Id*. Instead, the court concluded that the plaintiffs

---

[10]     In its June 21, 2010 Order, the Court of Milan addressed similar "final pleas" of three other plaintiffs.

could recover "as a result of economic loss" only "reimbursement of the expenses arising from their children's funerals."  *Id.*

The Court of Milan also attributed EUR 39,998.00 in damages for Jack King's temporary and permanent "physic damage (minor depression)."  *Id.* at 25-26.  The court explained that it had "ordered expert medical/legal consultation" on this issue, which had "confirmed the existence of real and proper psychic damage (minor depression) . . . suffered as a result of [Ms. King's] death," and that "[t]he conclusions reached on this point were not contested by the opposing parties."  *Id.* at 25.  The court noted that "the civil Justice Board of Observers for [the Milan] Court identified the parameters to be followed in accessing non-economic damages, hence the well-known 'tables' expressed in current Euros."  *Id.* at 26.  "Attributing a compensation of EUR 88.00 for each day of absolute temporary disability," the court concluded that Jack King was "entitled to EUR 6,600.00," "while as compensation for permanent non-economic damage the aforementioned tables - taking into account the age of the injured party at the time of the accident and the level of remaining disability - lead to an identification of the amount . . . owned to Jack Arnold King as EUR 33,398.00."  *Id.*  Having identified the relevant damages amounts provided by the tables, "[t]he Court [did] not recognize any elements that would justify a personalization of the settlement beyond the aforementioned amounts, which should be aimed at specific aspects of the illness and its course, and not the affliction already evaluated for the purposes of the other items of compensation."  *Id.*

Finally, the court recognized that, "from the above liquidated sums, one must subtract those paid in advance by the defendants prior to the start of the trial as well as those paid during the course of the proceedings." *Id*. at 27.   Although "[t]his resulted[ed] in the recognition . . . of a remaining credit" for the other plaintiffs, the Court of Milan concluded that "the compensation in favor of Jack Arnold King" was "amply satisfactory." *Id*.   Accordingly, "[g]iven the total compensation of Jack Arnold King during the course of the proceeding," the court did not award any additional damages but instead "order[ed] the defendants and summoned third parties jointly and severally to pay in his favor all court costs, assessed in the amount of EUR 700.00 for expenses, EUR 2,200.00 in duties and EUR 4,500.00 in attorneys' fees, plus all general expenses and accessory charges." *Id*. at 28.

### D.   *Cross-Motions for Summary Judgment*

According to the operative Third Amended Complaint ("TAC"), Defendant's liability to Plaintiffs stems from Cessna's alleged negligence when it: (1) did not conduct an investigation before hiring Air Evex; (2) did not require the Air Evex pilots to follow Cessna's own operations manual; (3) and did not call off the charter flight due to foggy weather.   *See* TAC at 33-34.   Alternatively, Plaintiffs claim that taxiing for takeoff in foggy conditions is *per se* an ultra-hazardous activity and that Cessna is strictly liable for any injuries incurred while engaging in such activity.

Through its pending motion, Cessna is moving for a summary judgment on both the negligence and strict liability claims.   Cessna argues that it is entitled to a judgment as a matter of law on these two theories of liability because: (1) under the

Italian Navigation Code, Cessna cannot be found liable for injuries of non-passengers third-parties; (2) even if the Navigation Code does not apply, Plaintiffs have presented no evidence that either Cessna, directly or through its agents, did not meet a duty of reasonable care or that its allegedly negligent actions proximately caused the Linate accident; (3) even if triable issues of fact remain on liability, Cessna is entitled to summary judgment on several of Plaintiffs' damages claims; (4) Jack King was not authorized to file a lawsuit on behalf of additional relatives, individual claims by Bonnie Ruby, Vanessa Stimmel and Brian King are barred by statutes of limitations; and (5) collateral estoppel of the Italian judgment forecloses Jack King from seeking additional damages in this action.

Plaintiffs, on the other hand, move for a judgment as a matter of law on the following issues: (1) Cessna's demonstration flight was a dangerous activity because it was not undertaken under normal weather conditions; (2) Cessna was the contracting carrier with respect to the demonstration flight; and (3) Italian law embraces the doctrine of joint and several liability and, thus, any attempts by Cessna to apportion fault should be denied.

## II.   ANALYSIS

### A.   *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party

bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

## B.      ***Collateral Estoppel Bars Jack King's Claims***

Although judgments rendered in a foreign nation are not entitled to the protection of full faith and credit, American courts will normally accord considerable deference to foreign adjudications as a matter of comity.  *See, e.g.*, *Hilton v. Guyot*, 159 U.S. 113, 163 (1895) (enforceability of foreign country judgments a matter of the "comity of nations"); *Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (1987) (same).  General comity concerns include: (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in sense of violating American public policy because

it is repugnant to fundamental principles of what is decent and just. *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 (11th Cir. 1994) (citing *Hilton*, 159 U.S. at 206). There is no dispute that the Court of Milan judgment should be entitled to recognition under the doctrine of international comity.

If a foreign court's judgment is final and enforceable in the forum state, it can be used to preclude a claim or issue in a domestic court. *Scheiner v. Wallace*, 832 F. Supp. 687, 693 (S.D.N.Y. 1993) (citing *China Trade & Dev. Corp. v. M.V. Choon Yong*, 837 F.2d 33, 36 (2d Cir. 1987)). Thus, several federal courts have permitted the use of foreign judgments to estop litigation of an issue if requirements of both comity and collateral estoppel are satisfied. *See, e.g., Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 361 (10th Cir. 1996) (holding that Australian judgment resolved factual issues against plaintiff and barred the claim); *Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 473 (D.N.J. 2001) (determining that a United Kingdom judgment was "conclusive as to the issues tried upon the merits therein" because it satisfied the requirements of collateral estoppel and comity).

Next, we must resolve the question of which law to apply in determining whether to give the Court of Milan's judgment a preclusive effect. Federal courts usually apply federal law on claim and issue preclusion in non-diversity cases. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971). Where the federal jurisdiction rests on diversity of the parties, a federal court must apply the law of the state in which it sits with respect to the doctrine of res judicata. *McDonald v. Hillsborough Cnty. Sch. Bd.*, 821 F.2d 1563, 1565 (11th Cir. 1987) ("Title

28 U.S.C. § 1738 requires a federal court to give the same preclusive effect to a state court judgment as the state court would give."). Cases addressing res judicata choice of law questions as they relate to foreign judgments, however, are in considerable conflict. Some courts apply the law of the rendering jurisdiction in determining what preclusive effect should be afforded to the judgement. Others employ domestic rules of res judicata giving the same effect to a foreign judgment as would be given to domestic or sister state judgments. *See generally* Robert C. Casad*, Issue Preclusion and Foreign Country Judgments: Whose Law?*, 70 Iowa L. Rev. 53, 54-58 (1984); *see also* Restatement (Third) Foreign Relations Law § 481, cmt. c. ("[A] foreign country judgment should ordinarily have no greater effect than it has in the country in which it was rendered. . . . However, no rule prevents a court in the United States from giving greater preclusive effect to a judgment in a foreign state that would be given in the courts of that state.").

As it turns out, the Court need not decided this choice of law question because collateral estoppel bars Jack King's claims under both American and Italian law.

In federal court, under the doctrine of collateral estoppel or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). For collateral estoppel to apply, (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue in the prior litigation must have been a critical and

necessary part of the judgment in that earlier action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *Berger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003).

Article 2909 of the Italian Civil Code, on the other hand, entitled 'Res judicata,' provides that "[f]indings made in judgments which have acquired the force of res judicata shall be binding in all respects on the parties, their lawful successors or assignees." Plaintiffs' expert Claudio Ceriani testified that, in order for collateral estoppel to apply, the common legal issue must also be a fundamental object of both cases and an essential premise of the prior ruling. *See* Decl. of Claudio Ceriani ¶ 7 [552-2].

The issue decided before the Court of Milan was the total amount of compensation, both economic and non-economic, that Plaintiff Jack King is entitled to under the Italian tort law for the tragic death of his daughter. Having analyzed and considered all arguments presented by Jack King, the Italian court concluded that the compensation he has already received as a result of the settlements with various defendants essentially exceeded the amount that he is entitled to under the Italian law. This conclusion is binding on Jack King in all subsequent litigation, be it here in the United States or in Italy.

The fact that Cessna was not the party to the Italian civil proceedings makes little difference. As Plaintiffs' own expert witness admits, Italian law does not permit

recovery of damages above the amount that the damaged party is entitled to under the law:

> Q: In other words, if a plaintiff's damages have been paid in total by one defendant, that claim is extinguished; correct?
>
> A: Yes.  There is no double recovery, in other words.
>
> Q: There's no double recovery, exactly.  So in the Linate crash context, if a plaintiff's entire damages under Italian law have been paid in other settlements, or through other means, then that claim is extinguished even as we sit here today; correct?
>
> A: I wouldn't say the claims are extinguished, I would say that there's not, in Italian Civil Law we would say that there is no interest to the action by a claimant.
>
> Q: The claim is gone?
>
> A: The claim is gone, in a few words.

Claudio Ceriani Test. 144, Sept. 14, 2005 [D.E. 373].

Likewise, we reach the same result under the American version of collateral estoppel.  The issue of Jack King's damages in the Italian proceeding was identical to the damages issue in this litigation.  The issue was actually litigated in the prior action.  The amount of damages was critical and necessary to the judgment in the Italian court.  And finally, Jack King had a full and fair opportunity to litigate the damages issue in the earlier proceeding.  *Barger*, 348 F.3d at 1347.

*Kathios v. General Motors Corp.* probably best illustrates the collateral estoppel problem that Jack King is facing.  862 F.2d 944 (1st Cir. 1988).  There, the plaintiff brought a dram shop action in state court.  *Id*. at 945.  He obtained a jury verdict and resulting judgment that was eventually satisfied.  *Id*.  The plaintiff then filed a

separate action in federal court against General Motors, alleging negligence and product liability claims. *Id.* General Motors moved for summary judgment, "contend[ing] that plaintiff's damages had been fully litigated in [the first case], and that satisfaction of the resulting judgment extinguished any further claim." *Id.* Trial court granted the motion, ruling that "plaintiff was collaterally estopped from relitigating the amount of damages." *Id.* The First Circuit affirmed finding it "obvious that the amount of damages was fully litigated in the state court." *Id.* at 946. The court of appeals reasoned that the jury verdict in the first case "caps any verdict which might be rendered in [the second case]." *Id.* The court noted that the plaintiff "had a full-sized bite of the apple" in the first case, in which the jury had "conclusively adjudicated" the extent of his damages. *Id.* at 951. By bringing the second action, the court further reasoned, "plaintiff bit off more than we can let him chew." *Id.* Accordingly, the court concluded that "resolution of the issue in [the first case] collaterally estops plaintiff from seeking redetermination of his damages in the instant action." *Id.* at 947. We believe the same reasoning applies here.

Regardless of Cessna's liability resulting from the unfortunate Linate accident, if any, Jack King has litigated the issue of his total damages in the Court of Milan. The Italian court concluded that he has been fully compensated for his injuries under Italian law. Jack King cannot now relitigate that issue here. Accordingly, we conclude that all of Plaintiff Jack King's claims here are collaterally estopped by the Court of Milan June 21, 2010 Judgment. Therefore, Cessna is entitled to summary judgment in its favor and against Jack King on all claims asserted by him in the complaint.

### C.   *Liability - Bonnie Ruby, Vanessa Stimmel and Brian King*

#### 1.  *Statute of Limitations*

Bonnie Ruby is the mother and Vanessa Stimmel and Brian King are the siblings of the decedent Jessica King.  Unlike Jack King, neither Bonnie Ruby, Vanessa Stimmel nor Brian King ever participated in the Italian civil proceeding and withdrew early on from the Italian criminal proceedings as *parte civile*.  Furthermore, none of them were named plaintiffs in this lawsuit when it was filed in 2003.  Instead, these three individuals were merely listed as "beneficiaries" of the estate of Jessica King.

It is undisputed that Italian law does not recognize a cause of action on behalf of an estate.  Instead, the law creates an individual right of action for a decedent's next-of-kin for its own injuries.  Cessna claims that it had previously stipulated "as purely procedural matter" that Jack King could bring suit on behalf of a decedent's estate for the purpose of aggregating individual claims.  Cessna emphasizes, however, that this stipulation presupposed that Jack King was in fact authorized to sue on behalf of those additional relatives of Jessica King at the time he filed suit.  Cessna points out that undisputed evidence now shows that Jack King was not authorized by other family members to sue on their behalf in 2003.  Accordingly, Defendant argues that Bonnie Ruby, Vanessa Stimmel, and Brian King's claims are now barred by the statute of limitations.[11]

Plaintiffs respond by arguing that Fed. R. Civ. P. 17(a)(1) authorizes Jack King, as personal representative of the estate of Jessica King, to file a complaint and bring

---

[11]   Under Italian law, the governing statute of limitations is two years from the date of the accident, or October 8, 2003.

claims on behalf of all potential heirs and beneficiaries.  Alternatively, Plaintiffs argue that Rule 17(a)(3) prohibits us from dismissing this action for failure to prosecute in the name of the real party without first giving that party a reasonable amount of time to "ratify, join, or be substituted into the action."

Rule 17(a)(1), however, is not applicable here because, as previously noted, Italian law does not give an executor of an estate the substantive right to advance claims on behalf of its beneficiaries.  Likewise, Rule 17(a)(3) is also inapplicable.  The purpose of Rule 17(a) is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."  Fed. R. Civ. P. 17 Advisory Committee's Notes (1966).

The issue here is that in March 2003, when this lawsuit was filed, Jack King had no authority to file claims on behalf of other family members.  He did not have express authority to file direct claims on their behalf and Italian law did not bestow him the power to assert claims on behalf of the estate.  Therefore, as Defendant correctly points out, Bonnie Ruby, Vanessa Stimmel and Brian King's direct claims did not originally commence when this lawsuit was filed and are now technically barred by the statute of limitations.

We recommend, however, that Bonnie Ruby, Vanessa Stimmel and Brian King be granted leave to amend the complaint in order to add their direct claims against Cessna.  Rule 15(c) permits the court to deem an otherwise time-barred action timely based on the "relation back" doctrine.  *Cliff v. Payco Gen. Amer. Credits, Inc.*, 363 F.3d 1113, 1131-33 (11th Cir. 2004).  Rule 15(c) states in relevant part that:

> (1) When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Although the text of Rule 15(c)(1) only refers to amendments that change the party against whom a claim is asserted, courts have permitted such amendments because prejudice to the other party is less likely to result from the addition of a plaintiff than from an amendment changing or adding defendants or claims.  *See* Fed. R. Civ. P. 15(c) Advisory Committee's Notes (1966); *see also Cliff*, 363 F.3d at 1132 (Extension of Rule 15(c) to amendments involving plaintiffs "rests on solid ground.").

Most courts simply apply Rule 15(c)(1)(C)[12] and ask whether the defendant would be unfairly prejudiced in maintaining a defense against the newly-added plaintiff and whether the defendant knew or should have known that it would be called upon to defend against claims asserted by the newly-added plaintiff.  *See, e.g., SMS Fin. Ltd. Liability Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 244-45 (5th Cir. 1999); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995).

---

[12]     This rule was previously numbered 15(c)(3).

The Ninth Circuit, on the other hand, does not explicitly apply Rule 15(c)(1)(C). Instead, it created its own three-part test for determining whether an amendment adding a new plaintiff relates back. *In re Sytex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996). Under this test, the amendment relates back if: (1) the original complaint gave the defendant adequate notice of the claims of the newly-proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original plaintiff and the newly-proposed plaintiff. *Id*.

The Eleventh Circuit explicitly stopped short of adopting either the majority or the Ninth Circuit rule. *Cliff*, 363 F.3d at 1132. Instead, in our circuit, the standard for determining whether an amendment to add a plaintiff "relates back" to the filing of the original complaint includes consideration of three elements: (1) whether the amended claim arose out of the same conduct, transaction, or occurrence as the original pleading; (2) whether the amendment will unduly prejudice the defendant; and (3) whether the original complaint provided adequate notice of the new plaintiff. *Id*. at 1131-33.

Turning to the facts of our case, it is clear that decedent Jessica King's remaining three relatives assert identical claims as those asserted by Jack King in the original complaint. It is also undisputed that Cessna has been on notice about potential claims by Jessica King's mother and her two siblings. Given the adequate length of time Defendant has been placed on notice and the absence of any evidence of prejudice, we conclude that Bonnie Ruby, Vanessa Stimmel, and Brian King's claims relate back to the original filing of Jack King's lawsuit.

## 2.   *Italian Civil Code versus Italian Navigation Code*

Italy uses civil law.  The primary source of law is legislation, not judicial decisions as is true in the Anglo-American or common law legal systems.  Judges in civil law countries must first turn to enacted statutes as superior sources of law.  Only when no legislation controls a given issue, lawyers and judges are entitled to look elsewhere for solutions.  Judicial decisions are merely persuasive authority that may only be used when neither legislation nor custom provide a rule of decision.  The doctrine of stare decisis utilized in the common law tradition, where a judicial decision possesses a precedential value, is rejected by the civil law systems.  Instead, judicial decisions are law only to the extent they fill in the gaps left by legislation and custom or establish custom.  *See generally*, John Henry Merryman, *The Civil Law Tradition* 22-23 (2d ed. 1985).

Defendant argues that claims of liability arising from the Linate disaster are governed exclusively by the "Codice della Navigazione," the Italian Navigation Code. Article 1 of the Navigation Code provides:

> This code, and the laws, regulations, corporative rules and the usages related to them shall be applied to the subject of maritime, internal and aerial navigation.  Where provisions of the law are lacking and there are no applicable ones by analogy, civil law shall apply.

*See* C. nav. Art. 1.

Article 942 of the Navigation Code, that addresses a carrier's liability vis-a-vis its own passengers, states:

> The carrier shall be liable for damages caused by delay or failure to perform the transportation, as well as accidents to the persons of the passenger, from the beginning of embarkation to the completion of

debarkation, unless he can prove that he or his employees or supervisors have taken all necessary and possible measures with due diligence to avoid the damage.

*See* C. nav. Art. 942.

Another section of the Navigation Code, Article 484, expressly allocates liability for "damage to the vessel[13] [aircraft] or to any persons or things on board" to each "ship." C. nav. Art. 484. Parties stipulate that the term "ship" means the "operator of the ship."

Accordingly, Cessna argues that Navigation Code extends liability only to the operators of the aircraft involved in the collision. Furthermore, Cessna, as a carrier, can only be liable under the Navigation Code to its own passengers. As a result, because under the Navigation Code there is no provision under which Cessna might be deemed liable, Defendant contends that it is entitled to a summary judgment in its favor. We disagree.

Article 1 of the Navigation Code instructs us that when its "provisions of the law are lacking and there are no applicable ones by analogy, civil law shall apply." Clearly, the Navigation Code expressly addresses an aircraft operator's liability and a carrier's liability to its own passengers. The Navigation Code does not, however, address a carrier's liability vis-a-vis non-passengers. Moreover, none of the Articles of the

---

[13]    Article 972 incorporates Articles 482 to 487, which otherwise apply to maritime accidents, to cover collisions of aircraft in flight.

Navigation Code can be used "by analogy" in such a situation.  Thus, pursuant to the plain language of Article 1, we must turn to the Italian Civil Code.[14]

Under Cessna's interpretation, if two airplanes collided due to the negligent act of non-operators there could be no recovery for the families of those killed in the collision.  We believe that this interpretation of Italian law would lead to irrational and unjust results.  *See, e.g., Manos v. Trans World Airlines*, 324 F. Supp. 470, 486 (N.D. Ill. 1971) (interpreting Italian law and finding that products liability claims against third-party are governed by the Civil Code because, *inter alia*, [i]t is difficult to believe that the Italian parliament intended to create a situation in which injured passengers of a defective aircraft would have no recourse because the carrier could prove normal diligence in not discovering and correcting a proven manufacturing defect.").

Article 942 of the Navigation Code merely provides passengers with rights non-passengers do not have.  It states that "carrier is liable for damages . . . involving personal injury to the passengers . . . unless the carrier can prove that, together with all its employees and people in charge, it took all th necessary and possible measures, in due diligence, in order to avoid the damages."  C. nav. Art. 942.  In other words, the article shifts the burden of proof, forcing the carrier to affirmatively prove it did everything possible to avoid a passengers' injury rather than have passengers prove the carrier's negligence.

---

[14]    Article 2043 of the Italian Civil Code, the general rule of tort liability, reads: "Compensation for unlawful damage: Any willful or negligent conduct causing an unjust harm to third parties, obligates the tortfeasor to compensate the damage."

Accordingly, we agree with Plaintiffs and conclude that the Navigation Code does not address liability of third party non-operators.  Therefore, under Article 1 of the Navigation Code, the general tort law of the Italian Civil Code, must be applied.

### 3.  *Direct and Vicarious Liability Claims*

Cessna contends that Plaintiffs are unable to adduce any evidence in support of each element of their direct and vicarious liability claims.[15]  Thus, pursuant to Rule 56, because Plaintiffs fail to raise a genuine issue of material fact as to each element, Cessna argues that it is entitled to a judgment as a matter of law on all claims.

a.   <u>Direct Negligence Claim</u>

To survive summary judgment on their claims of direct liability in negligence, Plaintiffs must adduce evidence that Cessna's actions: 1) breached a duty of care recognized by Italian law; and 2) proximately caused the accident.  Plaintiffs contend that Cessna was negligent in both failing to investigate Air Evex and in failing to follow their own manuals and procedures, and otherwise ensure that their sales demonstration flight was carried out safely.

First, we conclude that Italian law imposes direct duty on carriers to assign an air transportation task to individuals who possess necessary skills to ensure reasonable air safety during the execution of such transport.  *See ICOMSA v. Indri*, Cass. Apr. 20, 1989, n. 1855 [D.E. 551 Ex. 14].  In *ICOMSA*, the Italian Supreme Court reasoned that, in additional to contractual duties carriers owe their passengers,

---

[15]    Plaintiffs contend that Cessna is vicariously liable because its sales representative engaged in an ultra-hazardous activity under Article 2050 of the Civil Code.  Plaintiffs also argue that Cessna is liable in negligence under Article 2043, both directly and vicariously.

"general principle envisaged in Sections 2043 Italian Civil Code" also imposes an extra-contractual duty.  *Id*. at 48.  The Italian Supreme Court went on to describe breaches of such extra-contractual duties may include "imprudent reliance for air transport on party lacking the essential technical means for its performance without exposing travelers to anomalous risks exceeding those encountered on every journey" and failure "to exercise those management and control powers that the presence on board the aircraft of the legal representative of ICOMSA fully facilitated."  *Id*. at 48-49.  Although the *ICOMSA* decision pertained to extra-contractual duties of carriers vis-a-vis their own passengers, we see no reason to extend such duty to non-passengers that were injured during a collision.

Furthermore, there exists a genuine issue of material fact whether Cessna breached such a duty.  Some evidence supports Cessna's position that Air Evex was a licensed on-demand charter-flight service with experienced pilots.  Other evidence, however, suggests that Cessna pilots were not certified to operate the aircraft in the weather conditions that existed at the Linate airport at the time of the accident. Therefore, Cessna is not entitled to summary judgment on this issue.

Next, Cessna argues that Plaintiffs have failed to introduce sufficient evidence as to but-for and proximate causation to survive a summary judgment motion. Proximate cause is usually a question of fact for the jury to resolve.  *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1575 (S.D. Fla. 1992) (applying Florida law).  It may only be resolved at the summary judgment stage if the facts are not in dispute and capable of only one interpretation. *Margrave v. British Airways*, 643

F. Supp. 510, 513-14 (S.D.N.Y. 1986) (entering summary judgment in favor of a carrier and noting that no reasonable juror could conclude that the carrier's conduct proximately caused the plaintiff's injuries).

Plaintiffs have introduced sufficient evidence to create a question of fact on the issue of proximate causation. For example, Plaintiffs proffered that Cessna hired pilots that were not licensed to execute take-offs at the prevailing Category III weather conditions. Plaintiffs also proffered that Cessna had failed to follow its own operations manual that prohibits landings in Category II or Category III weather conditions. Based on these facts and because we are bound to view all evidence in the light most favorable to the non-moving party, we cannot rule as a matter of law that no reasonable juror could conclude that Cessna's alleged actions did not proximately cause the Linate accident.

   *b.*   *Ultra-Hazardous Activity Claim*

Cessna moves for summary judgment on the ultra-hazardous activity Article 2050 claim. In support of its position, Cessna argues that aviation in inclement weather is not considered an ultra-hazardous activity under Italian law.

Article 2050 of the Italian Civil Code reads:

> Responsibility for carrying out dangerous activities: Anyone who causes damages to others while carrying out an activity that is dangerous either because of its nature or because of the means utilized to carry it out, is required to compensate said people for the damages that they have sustained unless the person who caused the damage can prove that he/she adopted all necessary precautions to avoid the damage.

C.c. Art. 2050.   Parties are in agreement that air aviation is not considered a dangerous activity *per se* under the Italian law.  Under certain conditions, however, air navigation is deemed a dangerous activity and Article 2050 is applicable.

According to the Italian Supreme Court, Article 2050 is applicable to air navigation when it is carried out in "abnormal and dangerous conditions." *Sassella v. Elitellina Soc.*, Cass. Nov. 13, 1997, n. 11234, at 4 [D.E. 551 Ex. 3].  The Court further explained that "[such] hazardousness concretely exists every time that this activity [air navigation] does not take place within the normal limits of expected conditions, in compliance with flight plans, safety conditions, ordinary atmospheric conditions." *Ministry of Defense v. Antonio*, Cass. Jul. 19, 2002, n. 10551, at 5 [D.E. 551 Ex. 4].

Plaintiffs' expert, Claudio Ceriani, testified that whether something constitutes an operation of an aircraft as an "abnormal and hazardous activity" under Article 2050 is a factual question based on totality of circumstances.  *See* Claudio Ceriani Test. 74, Sept. 14, 2005 [D.E. 373].  According to Ceriani, such analysis must include "all conditions, including the crew qualifications, it's relative [sic] to the aircraft, how it is equipped, how is the crew, how are the conditions." *Id*. at 75.

Given the weather conditions at the time of the accident, technical capabilities of the aircraft and the pilots' qualifications, combined with the highly factual nature of this issue, we conclude that Cessna is not entitled to a summary judgment on this issue.   A factual finding will be necessary at trial.

c.    *Vicarious Liability Based on Stefano Romanello's Actions*

Cessna moves for summary judgment on all claims, stemming both from ultra-hazardous activity or negligence, that are based on Stefano Romanello's actual and subjective knowledge.  Specifically, Cessna argues that Plaintiffs' evidence relating to Romanello's knowledge about the weather conditions is purely speculative and based on improper inference.  Therefore, because there is no basis for a reasonable jury to conclude that Romanello "'knew' that the 'weather conditions' were in any sense 'prohibitive,'" a summary judgment should be entered in favor of Cessna on this issue. We disagree.

"Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (per curiam).  Circumstantial or "indirect" evidence, on the other hand, is "evidence of facts or circumstances from which the existence or nonexistence of fact in issue may be inferred." *Wright v. Southland Corp.*, 187 F.3d 1287, 1294 (11th Cir. 1999).  Although Plaintiffs have proffered no direct evidence about Romanello's knowledge, they may still rely on indirect circumstantial evidence to prove their case. Here, Plaintiffs base their inference about Romanello's knowledge on the visibly extremely foggy weather conditions that were present at Linate.  Plaintiffs also proffer that an experienced sales agent, such as Romanello, should have known that Cessna CJ2 was not legally equipped for flight operations in such near-zero visibility conditions.  The jury is free to accept such an inference just as it is entitled to reject it. Thus, Defendant is not entitled to a summary judgment on this issue.

Cessna also argues that Romanello's actions were not the proximate cause of the accident. However, as we noted earlier, causation is a highly factual question. Summary judgment in favor of Cessna would be improper at this stage.

### 4. Supervening Causes and the Findings of the Italian Court

Parties stipulate that Italian law recognizes the doctrine of supervening causation, whereby the chain of causation between an act of negligence and an injury is disrupted by an subsequent act of negligence "sufficient on [its] own to have led to the incident." C.p.p.[16] Art 41[17] [D.E. 551 Ex. 10].

Cessna points out that the Linate disaster led to an extensive investigation by the Italian authorities and ultimately criminal convictions against the Linate ground controller and several officials of the Italian aviation authorities. Cessna further points out that all of those Italian authorities concluded that the crash had numerous causes, any one of which was sufficient to break the chain of causation between the acts of Cessna or Romanello and the accident. Therefore, according to Cessna, because these findings are binding in this litigation as a matter of Italian law, Defendant is entitled to judgment in its favor purely as a matter of collateral estoppel. Cessna cites to Articles 651 and 654 of the Italian Code of Criminal Procedure in support of its argument.

Once again, we start with the language of the statute. Article 651 of the Italian Code of Criminal Procedure states:

---

[16]     Codice di procedura penale - Italian Code of Criminal Procedure.

[17]     Article 41 of the Code of Criminal Procedure is applicable to civil cases. *See Rumi v. G.I.A.*, Cass. Nov. 10, 1993, n. 11087 [D.E. 551 Ex. 11].

> The irrevocable criminal sentence . . . of conviction pronounced following debate . . . shall have the force of a judgment as regards ascertainment of grounds for the act, its criminal unlawfulness and the assertion that the accused has committed it, in the civil or administrative judgment for repayment of and compensation for the claim . . . *imposed on the convicted party and the liable civil party who has been sued or who has taken part in the criminal trial.*

C.p.p. Art. 651 (emphasis added) [D.E. 551 Ex. 10].  Clearly, Article 651 makes the criminal sentence binding only on the convicted party during the subsequent civil proceeding.  Put differently, a plain reading of Article 651 permits a party in a subsequent civil proceeding to utilize the prior criminal conviction against the *convicted party* or *the liable civil party who has been sued or who has taken part in the criminal trial.*  Article 651 does not, however, permit a party to utilize the criminal conviction against the prevailing civil plaintiff from the criminal proceeding.

Article 654, on the other hand, is simply inapplicable.  Article 654 states:

> The irrevocable criminal sentence of conviction . . . or acquittal . . . pronounced against the accused, the civil party . . . and the liable civil party in the criminal trial shall have force of law in civil or administrative proceedings . . ., when there is a dispute as to a right or legitimate interest whose recognition depends on the ascertainment of the same material facts that were the subject of the criminal proceedings, on condition that the ascertained facts have been held to be relevant for the purpose of the criminal decision and the civil law does not place limitations on the proof of the disputed subject position.

C.p.p. Art. 654 [D.E. 551 Ex. 10].  Although at first blush it may not be apparent, the Italian Supreme Court expressly distinguished the applicability of Article 651 and 654. The Court pointed out that although "as a general rule the provisions concerning the effects of a criminal judgment in non-criminal proceedings (articles 651-654 C.C.P.) tend to be viewed as a single discipline," "they differ significantly depending on the

type of proceeding in which the criminal decision is being invoked." *Cappola v. Kaelly*, Cass. Aug. 2, 2004, n. 14770, at ¶ 3.1 [D.E. 558 Ex. 1].  The Supreme Court further emphasized that the articles "identify three categories of proceedings: civil and administrative proceedings to award damages (Articles 651 and 652 C.C.P.), disciplinary proceedings (Article 653), and a third group generically indicated as 'other civil and administrative proceedings.'" *Id.*  It also went on to explain:

> What appears to this Court to make a sharp difference between the hypotheses set forth in articles 651-652, Code of Penal Procedure on one hand, and article 654 , Code of Penal Procedure on the other, regarding the efficacy of res judicata is the objective limitation placed by the two categories of rules.  With the scope of "other civil or administrative proceedings" (article 654, Code of Penal Procedure) the judgment of acquittal or conviction is indifferently binding upon the facts, verified by the penal judge and relevant for the purpose of the decision, which are the basis of acknowledgment of the disputed legal right or interest.  Within the scope of a civil or administrative proceeding for damages, instead, the subject is profoundly different.  The judgment of conviction, pursuant to article 651, Code of Penal Procedure, has effect of res judicata "in regard to the verification of the existence of the act, its criminal illegality, and the statement that the defendant committed it.

*Id.* at ¶ 3.4.  Thus, the Italian Supreme Court concluded that as a consequence "civil proceeding for damages [are] governed . . . exclusively by article 651 and 652, Code of Penal Procedure and not by article 654, Code of Penal Procedure."  *Id.* at ¶ 3.6.

We see no reason not to follow the Italian Supreme Court's holding regarding the applicability of Articles 651 and 654.  Because the lawsuit against Cessna is a "civil proceeding for damages," Article 654 is not applicable.

Likewise, the findings of the Italian criminal court are not binding under the previously mentioned Article 2909 of the Italian Civil Code or the federal version of the doctrine of res judicata.  Neither Cessna nor any of the remaining Plaintiffs were

parties to the Italian proceedings.  Most of all, however, the common legal issue in our proceeding was not a fundamental object of the criminal proceedings in Italy.  The theories of liability against the Italian defendants were different than Plaintiffs' theory of liability against Cessna in this action.  Namely, the goal of the Italian proceedings was to find defendants criminally and civilly liable for their negligent maintenance and ground operations at the Linate aiport.  As such, Plaintiffs had no motive at all to demonstrate how non-party Cessna's actions or inactions caused the accident.  Had they sought to do so, it would have only served to exonerate the defendants in that case, contrary to his own interests.  Thus, Plaintiffs did not have a "full and fair opportunity to litigate the issue in the earlier proceeding." *Berger*, 348 F.3d at 1293.

Accordingly, because the findings of the Italian criminal court are not binding on this proceeding under the doctrine of collateral estoppel, a summary judgment on this issue in favor of Cessna would not be appropriate.

## D.   *Damages - Bonnie Ruby, Vanessa Stimmel and Brian King*

### 1.   *"Lost Net Accumulations"*

Cessna moves for a summary judgement on Plaintiffs' claim for recovery of the "lost net accumulations."[18]   According to Cessna, such damages are simply not recoverable under Italian law.

We start the analysis of this issue, as we should application of any law in a civil system, with the relevant statute.  Article 2043 of the Italian Civil Code, entitled

---

[18]     "Net accumulations" means the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of her or his estate if the decedent had lived her or his normal life expectancy.

"Compensation for Unlawful Acts," provides broadly that "any fraudulent, malicious, or negligent act that cause an unjustified injury to another obligates the person who has committed the act to pay damages. *See* C.c. Art. 2043 [D.E. 551 Ex. 1]. The Code is apparently otherwise silent on the issue.

Professor Massimo Franzoni in his Treaties on Civil Liability: Compensable Damage,[19] however, expressly rejects the existence of the "net accumulations" doctrine in Italian law. [D.E. 551 Ex. 20]. He states that "the establishment of an equivalency between the lost productive capability and the assets that the heirs would have perceived upon succession due to natural death appears to be the product of rather uncertain conjecture and therefore, unreliable." *Id.* at 587. This unreliability, the treatise reasons, is based in part on the fact that "[n]ot only would the victim have been able to see his own working capability diminished due to other causes, but could have squandered his own entire estate by choice before his death." *Id.* Therefore, according to Professor Franzoni, under Italian law, surviving relatives "with the legal standing to sue for damages [are those] who have suffered harm," and "each of the victims exercises, in terms of compensation for the injury, an autonomous right, thus the damage must be liquidated in relation to the harm suffered by each as a result of the injurious event." *Id.* This "excludes the possibility of the judge arriving at an all-inclusive and joint determination of the damage and of the resulting distribution of the entire amount in an automatically proportionate manner among all those entitled to compensation." *Id.*

---

[19]     *Trattato della responsabilita Civile: Il Danno Risarciblile*

Indeed, the somewhat speculative nature of the "net accumulation" doctrine appears to be rather inconsistent with Italian law on damages for economic support. Italian law permits a plaintiff to recover economic support that he or she can reasonably expected to receive in the future based on specific and concrete evidence. *See, e.g., D.M. v. Generali Assicurazioni S.p.A.*, Cass. Feb. 6, 2007, n. 2546 ("[T]here can be no economic damage '*in re ipsa*'; as the right to compensation for such damage, which the loved ones of a deceased are entitled to due to the wrongful acts of others, pursuant to Art. 2043 of the Civil Code, requires determining if [the plaintiffs] were deprived of any economic utility that they benefitted from and, presumably, would have continued to enjoy in the future.") [D.E. 537 Ex. C, at 3]; *A.D.R. v. W. ASS., SPA.*, Cass. Mar. 2, 2004, n. 4186 (awarding surviving family members as economic damages only those financial benefits they enjoyed during the life of the decedent and that reasonably could be presumed to continue in the future) [D.E. 551 Ex. 24, at 10-11]; *see also King v. Air Evex GmbH*, Milan Trib., n. 59356/2003, at 25,  Judgment of the Court of Milan (declining to award Plaintiff Jack King economic damages based on plaintiff's "financial and social status.") [D.E. 614-1].

Furthermore, quite tellingly, Plaintiff Jack King did not even make a claim for "lost net accumulations" in the Court of Milan during his "final plea" for additional damages.

Finally, Plaintiffs cite to the following language of the Italian Supreme Court:

> the fact of whether the children have come of age and are qualified for productive work does not represent an insurmountable limit to the possible indemnification of damages caused by the death of the parent, considering the survivors expectation to be able to benefit from the

> possible savings that the deceased would have formed with part of the
> income not allocated to his own expenses and to those of his family.

Cass. Nov. 21, 1995, n. 12020.  Contrary to Plaintiffs' suggestion, however, we are not

of the opinion that the cited paragraph stands for an endorsement by Italy's highest

court of the "net accumulation" doctrine.  Instead, it merely states that there exists a

certain level of expectancy on behalf of adult children that they may inherit certain

amount of financial benefit upon the passing of the parents.  The statement is logical.

It is based on generally accepted common assumption that children outlive their

biological parents in the ordinary course of events.  Such expectancy is certainly not

present in our case.

We conclude that Plaintiffs cannot recover economic damages for "lost net

accumulation" under Italian law.  Accordingly, Cessna is entitled to a partial summary

judgment on this issue.

### 2.  *Biological Damages - Iure Proprio (Direct Damages)*

Next, Cessna argues that it is entitled to a judgment as a matter of law on all

of Plaintiffs' claims for individual and personal (direct) biological damages.  It points

out that, as with economic damages for lost financial support, Italian law requires

concrete proof of biological damages.  Thus, because Plaintiffs have failed to provide

any evidence of such damages, Cessna contends that a summary judgment should be

entered in its favor on this issue.[20]

---

[20]    In footnote 21 of its motion for summary judgment, Cessna argues that
this Court must liquidate the amount of damages according to the Court of Milan's
damages tables.  Although the Court of Milan recently declined an upward departure
from the tables when analyzing Jack King's damages, our record is insufficient at this
stage to make such a determination.  Whether or not such a departure is warranted is

Although we are mindful of the high standard of proof that Italian law imposes on recovery of *iure proprio* biological damages, a dispute of material fact on this issue prevents a judgement as a matter of law at this stage with regards to Vanessa Stimmel and Brian King.   For example, Vanessa Stimmel testified that she received psychological counseling for approximately seven months.  *See* Vanessa Stimmel Depo. at 11:13-16 [D.E. 572 Ex. H].  She also testified that she had difficulty sleeping and had an overall "hard time functioning."  *Id.* at 36:14-17.  Likewise, Brian King also testified that he suffered from depression and that the death of his sister left him "sad." *See* Brian King Depo. at 75:23-76:1 [D.E. 572 Ex. G].

Plaintiff Bonnie Ruby, on the other hand, has proffered no evidence that she suffered any biological damages.  Therefore, Cessna is entitled to summary judgment against Bonnie Ruby on her claim for direct biological damages.[21]

### 3.   *Biological Damages - Iure Hereditatis (Right of Inheritance Damages)*

Finally, Cessna moves for a summary judgment on Plaintiffs' claims for recovery of biological damages derivatively on behalf of decedent Jessica King.  Cessna argues that Italian law permits such recovery only when "appreciable" amount of time elapsed between the injuring event and the death.  Here, Cessna points out, undisputed facts

---

a mixed question of law and fact.  Accordingly, it should be raised and resolved at the later stage of this proceeding.

[21]    We note that this part of Cessna's summary judgment motion pertains to the narrow issue of direct biological damages, such as damages to one's physical and psychological health.   It does not cover damages for the "loss of the parental relationship" that Bonnie Ruby may be entitled under Italian law.

establish that such an "appreciable" amount of time did not elapse between the decedent's initial injury and her death.

It is undisputed that Jessica King passed away at most 18 seconds after the airliner's initial collision with the Cessna aircraft. We must, therefore, determine whether 18 seconds does or does not qualify as "appreciable" time as a matter of law under Italian law.

The Italian Supreme Court has recently held that "in the event of immediate death or death occurring shortly after the harmful event," victims are not entitled to compensation "for bodily harm due to loss of life." *A.L. v. S.F.*, Cass. Nov. 11, 2008, n. 26972, at 16 [D.E. 537 Ex. F]. "[T]he caselaw of [The Italian Supreme Court] distinguishes the event in which death follows immediately or almost upon injury from that in which an appreciable period of time elapses between injury and death; the first case excludes the possibility of bodily harm . . . ." *C.A. v. AXA Assicurazioni SPA*, Cass. Jan. 17, 2008, n. 870, at 3 [D.E. 537 Ex. D]. *Iure hereditatis* recovery is permitted when "death is not instantaneous and occurs long after the time of injury." Franzoni, *Treaties on Civil Liability: Compensable Damage,* at 605.

A thorough review of the cases submitted by the parties leads us to conclude that Italian courts define an "appreciable time" in terms of days. *See C.D'A. v. Sai SPA*, Cass. Feb. 23, 2004, n. 3549, at 7-8 (29 days) [D.E. 568 Ex. F]; *Antonio v. Ras SPA*, Cass. May 16, 2003, n. 7632, at 7 (ten days) [D.E. 568 Ex. G]; *Fusco v. Puzone*, Cass. Mar. 14, 2002, n. 3728, at 8 (five days) [D.E. 568 Ex. H]. Plaintiffs cited one case where the Italian Supreme Court remanded a case to the trial court to reconsider

whether a four hour period constituted a period of an "appreciable time." *Loiarro v. Assitalia SPA*, Cass. Apr. 2, 2001, n. 4783 [D.E. 344].

However, the most compelling precedent comes from Plaintiff Jack King's Italian civil proceedings. When faced with identical undisputed facts as ours, the Court of Milan rejected plaintiffs' pleas for hereditary compensation as a matter of law. Judge Maura Barberis concluded that "the interval between the collision of the aircraft containing the plaintiffs' children with the Air Evex GMBH aircraft and their death . . . as lasting no longer than one minute - assuming that they were awake from the start (and not half asleep, as is probable given the hour of departure), nor can the period preceding their death be evaluated as catastrophic psychic damage." *King v. Air Evex GmbH*, Milan Trib., n. 59356/2003, Judgment of the Court of Milan, at 25.

Accordingly, after a careful review of Italian law on this issue, we reach the same conclusion as Judge Barberis. The 18-second interval between the initial injury and eventual death is too short of a period to constitute "appreciable time" under Italian law. Cessna is entitled to a partial summary judgment on this issue.[22]

### E. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs move for summary judgment on three issues: that: (1) Cessna's demonstration flight was a dangerous activity because it was not undertaken under normal weather conditions; (2) Cessna was the contracting carrier with respect to the

---

[22]     We decline to follow the rule adopted by two trial level courts in Italy that leave the question of "appreciable time" solely to "the pure individual sensibility" of the fact-finder. As Defendant points out, such a rule was never endorsed by the Italian Supreme Court. In light of this fact, we are bound to follow the long-settled law cited by Cessna.

demonstration flight; and (3) Italian law embraces the doctrine of joint and several liability and, thus, any attempts by Cessna to apportion fault should be denied

### 1.  Cessna's Demonstration Flight

Plaintiffs seek a summary judgment finding that the demonstration flight was a dangerous activity.  For nearly identical reason we already recommended denial of Cessna's summary judgment motion on the same issue, we reach the same conclusion here.

As previously stated, air aviation is not considered a dangerous activity *per se* under the Italian law.  It may, nonetheless, be considered such under certain conditions.  Whether operation of an aircraft constitutes an "abnormal and hazardous activity" is a highly factual question based on totality of circumstances.

Therefore, for the reasons discussed above, genuine issues of material fact preclude Plaintiffs from summary judgment on this matter.

### 2.  Contracting Carrier

Plaintiffs claim that there is no genuine issue of material fact as to whether Cessna was the "contracting carrier" with respect to the demonstration flight, and they are entitled to partial summary judgment on this issue.

Under Italian law, an individual that arranges a flight for its own business purposes is considered a "contracting carrier" under the law.  *ICOMSA v. Indri*, Cass. Apr. 20, 1989 n. 1855, at 43.  In *ICOMSA*, an engineering company chartered a Cessna 421C from Air 70 for the purpose of flying several of its managers, consultants and collaborators to Algeria for a meeting with Algerian authorities concerning a real

estate development. *Id*. at 36. The aircraft crashed, killing all aboard. *Id*. The heirs of some of th passengers sued ICOMSA for damages. *Id*. The trial court concluded that ICOMSA a "contracting carrier" and that Air 70 was the "operator," and found both entities jointly and severally liable for the heirs' damages under Articles 2043 and 1228 of the Civil Code and Article 942 of the Navigation Code. *Id*. at 36-37.

Subsequently, the Italian Supreme Court affirmed the judgments. *Id*. at 53. During the appeal, ICOMSA argued that, although it had arranged the details of the trip for its own business purposes and had paid the charter company Air 70 for the transport, it had not exercised any supervision or control over the flight. *Id*. at 42. Therefore, ICOMSA contended, it was Air 70 who was the "contracting carrier" and not ICOMSA. *Id*. The Italian Supreme Court rejected this argument. It held that, because ICOMSA had arranged the flight for its own business purposes and had paid Air 70 for the charter of its aircraft, and because the passengers had no contractual relationship with Air 70, ICOMSA was properly found to be a carrier. *Id*. at 42-44.

We agree with Plaintiffs that facts set fourth in *ICOMSA* are legally indistinguishable from facts in this case. Cessna arranged the demonstration flight at issue and contracted with Air Evex's owner for such purpose.

Cessna does not challenge any factual assertions made by Plaintiffs. Instead, citing to the Navigation Code, the gist of Cessna's opposition to Plaintiffs' motion for summary judgment on this issue concentrates on the fact that a carrier cannot be held liable to third parties not party to the transport contract. However, as we noted

earlier, carriers can be held liable to non-passengers third parties under Article 2043 of the Italian Civil Code.

Thus, we conclude that Plaintiffs' motion for partial summary judgment should be granted on the issue that Cessna was a contracting carrier with respect to the demonstration flight.

### 3.  *Apportion of Fault*

Lastly, Plaintiffs move for a summary judgment on the issue of fault apportion. According to Plaintiffs, because Italian law embraces the doctrine of joint and several liability, Cessna is not allowed to ask the jury to apportion fault based on the degree of its negligence, if any.

Parties are in the agreement that Italian law embraces the doctrine of joint and several liability.  Article 2055 of the Italian Civil Code provides:

> Joint and Several Liability: If a tort is committed by more than one person, then all are jointly and severally liable for damages caused.  The person who compensated the damages is entitled to act against each of the other liable parties, in the measure determined by the degree of their fault by the extent of the ensuing consequences.  In case of doubt, the individual faults are considered equivalent.

C.c. Art. 2055.  Thus, Italian courts have applied the doctrine of joint and several liability to give a party awarded damages the right to claim the entire award from any of the actors who were found liable, and to apportion liability amount the negligent actors based upon their degree of fault by way of contribution between them.  *See, e.g., Valnerina v. Leto*, Cass. Apr. 6, 2006, n. 8105, at 2 [D.E. 559 Ex. E].

The Code, however, also provides that a party may waive solidarity of joint and several liability if a plaintiff already recovers part of the damages from one of the tortfeasors.  Article 1311 provides:

> Waiver of solidarity.  A creditor who waives solidarity in favor of one of the debtors retains his right of action *in solido*[23] against the others (1313). The creditor waives solidarity: 1) if, without reservation, he acknowledges payment by one of the debtors as to his share; 2) if he has instituted judicial proceedings against one of the debtors as to his share and such debtor has assented to the claim, or if judgment for the creditor has been entered.

C.c. Art. 1311.  Cessna argues that Plaintiffs have "waived solidarity" as to the "share" of the defendants in the Italian litigation.  The "share" in this context refers to the proportion of liability, not the amount paid, and thus the waiver of solidarity "reduces the entire debt by the percentage equal to the share settled and automatically causes the dissolution of the bond of severalty between the stipulating co-debtors and the others."  *U.A.P. v. Italiana*, Cass. Dec. 19, 1991, n. 13701, at 5 [D.E. 568 Ex. C].  As a result, because Plaintiffs have initiated lawsuits against various defendants and, as a result, obtained monetary settlements from them, solidarity is waived and jury must appropriate fault among the tortfeasors.

Plaintiffs do not dispute the waiver principle.  Instead, they argue that waiver is inapplicable.  Bonnie Ruby points out that although she initiated a lawsuit against SAS Airlines in California, the settlement payment in that proceedings was made pursuant to the Warsaw and Montreal Conventions and was made irrespective of fault.

---

[23]      According to Article 1292, an obligation *in solido* is "when several debtors are all bound for the same performance, in such manner that each can be required to perform it in its entirely."  C.c. Art. 1292.

Vanessa Stimmel and Brian King, on the other hand, withdrew their civil complaints in the Italian proceedings.

We conclude that the record is incomplete at this time for the Court to rule on this matter. Resolution of this matter requires analysis of the terms of the settlements that Plaintiff Bonnie Ruby entered in California and the remaining Plaintiffs entered Italy. These settlements are not currently part of the record. Therefore, Plaintiffs' motion for summary judgment should be denied on this issue.

### III.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

1.     Defendant Cessna Aircraft Corporation's Motion for Summary Judgment [D.E. 573] should be **GRANTED** in part and **DENIED** in part.

a.     Defendant's Motion for Summary Judgment against Plaintiff Jack King should be **GRANTED**.

b.     Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel and Brian King based on statute of limitations should be **DENIED**. Plaintiffs Bonnie Ruby, Vanessa Stimmel and Brian King should be allowed to amend the Complaint in order to assert direct claims against Defendant in their individual capacity.

c.     Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel, and Brian King on direct and vicarious liability negligence and ultra-hazardous activity claims based on insufficient evidence should be **DENIED**.

d.      Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel, and Brian King on vicarious liability claims based on Stefano Romanello's actions should be **DENIED**.

e.      Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel, and Brian King on all claims based on supervening causes and the findings of the Italian court should be **DENIED**.

f.      Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel, and Brian King regarding the "lost net accumulations" damages should be **GRANTED**.

g.      Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel, and Brian King regarding direct (iure proprio) biological damages should be **DENIED** as against Vanessa Stimmel and Brian King and **GRANTED** as against Bonnie Ruby.

h.      Defendant's Motion for Summary Judgment against Plaintiffs Bonnie Ruby, Vanessa Stimmel and Brian King regarding the right of inheritance (iure hereditatis) biological damages should be **GRANTED**.

2.      Plaintiffs' Motion for Partial Summary Judgment [D.E. 571] should be **GRANTED** in part and **DENIED** in part.

a.      Plaintiffs' Motion for Summary Judgment on the issue Cessna's demonstration flight as ultra-hazardous activity should be **DENIED**.

b.      Plaintiffs' Motion for Summary Judgment on the issue of Cessna as "contracting carrier" should be **GRANTED**.

c.     Plaintiffs' Motion for Summary Judgment on the issue of fault apportion should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.   Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.   *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of September, 2010.

_____ /s/ *Edwin G. Torres* _____
EDWIN G. TORRES
United States Magistrate Judge